OPINION of the Court, by
Ch. J. Boxxe.
On the 28th of May 1805, Thompson entered into articles of agreement with John Irvin, as agent for Elizabeth Ir-vis i, for the purchase of a tract of land of 400 acres, for which he was to pay at the rate of twenty shillings per acre, for all that should, upon a legal investigation to be had at the expence and trouble of said Elizabeth Irvin, be found clear of dispute or incumbrance, provided such investigation should be commenced in two years from the date of the agreement $ but if the said Elizabeth should not choose to make such investigation, he was then to pay the sum of twenty-five pounds, in a young horse, for a conveyance with warranty from her and her heirs only. Subsequent to this agreement, Elizabeth Irvin conveyed the same tract to Grundy and Mófe, who was. her niece, for no other consideration but that of the relation between them; and Grundy and wife after-wards sold and conveyed to .Haney, who had previous notice of Thompson’s contract.
To obtain a conveyance^agreeably to the terms of his contract, Thompson filed his bill, making John and Elizabeth Irvin, Grundy and wife, and Ilaney, defendants. .On a final hearing the court below decreed in favor of Thompson, and the defendants have appealed to this court.
*296 As Haney had notice of Thompson’s contract prior to his purchase, it is evident he can stand in no better situation than Grundy and wife, under whom he claims j and as they are not purchasers for a valuable consideration, it'is equally clear that they could not, had they still the legal title, protect themselves in the enjoyment of it on the ground of their not having notice of Thompson’s prior equity, if any Such he has : for they have not an equal equity to oppose to his, and the legal title only prevails where the equity is equal.
í e are led then directly to the investigation of Thompson’s equity, as it arises from the contract with John Irvin as the agent of Elizabeth Irvin. This depends, 1st, upon the authority John Irvin had to make such a contract; and 2dly, upon the fairness of the contract.
1. As to John Irvin’s authority, it appears that he acted in virtue of a letter of attorney written by James Allen, for and in the name of Elizabeth Irvin. This purports to convey ample power to John Irvin to make such a contract as he entered into with Thompson. But Elizabeth Irvin, though she admits that she directed Allen to write and sign for her a power of attorney to John- Irvin to sell 25 .acres, denies ever having directed him to write one authorising the sale of 400 acres.
Allen, whose deposition is taken in the cause, proves that lie wrote the power under which John Irvin acted, and is positive that he wrote it according to his instructions. As to who gave the instructions, his recollection does not enable him to speak with the same precision, but the circumstances of the case abundantly prove it, The letter of attorney, as appears from other testimony as well as from Allen’s deposition, was written in the presence of Elizabeth Irvin, or at least in the same room where she was ; and at its bottom there is a memorandum, signed by Allen, stating that the letter was written by her instructions. These facts, taken in connection with the circumstances that Allen is a man of business, of fair character, and had no apparent motive to induce him to act incorrectly, lead the mind with almost a moral certainty to the conclusion that the letter was written by the instructions of Elizabeth Irvin.
But it is contended as the letter of attorney was not signed by Elizabeth Irvin herself, that it is void under the statute against frauds and perjuries.
*297 The language of the statute most certainly does not embrace the case. The statute requires á contract for the sale of land to be signed by the party or his agent, but as to the mode of appointing an agent, the statute has left it as it was at common law. To construe the statute to require an authority to make a contract for the sale of land to be in writing and signed by the party giving such authority, would in effect prevent every person who is unable to write from making a binding contract. Such an effect certainly cannot be presumed to have been within the intention of the legislature to produce by the statute.
2. As to the fairness of the contract, little need be said. The suggestion that John Irvin was induced to sell upon the terms he did by the representations of Thompson that the land was covered with adverse claims, is not satisfactorily established. But had such representations been made, they would in point of fact have been true: for it is proven that the whole of the land is covered with interferences, and about three-fourths of it by elder patents; and it is not shown that the claim of Elizabeth Irvin is superior to any one of the interfering claims. The price stipulated to be given for the land, when cleared of these interferences, dcfes not appear to be an inadequate one ; nor does the difference between that price and that which is agreed to be given for it when incumbered with those disputes, justify us in saying the latter is unreasonable.
Upon the whole, we are of opinion the decree of the inferior court is correct, and must be affirmed with costs.