Chief Justice Bibb
delivered the Opinion of the Court.
Oh the 28th of September, 1818, David and ¡John Murray executed their obligation to Julius and Elias Jackson, to convey a lot of ground, in ten days, with general warranty, in consideration of nine hundred uojlars. One half of the price being paid, Murrays obtained judgment at law against Jacksons for the residue; Jacksons exhibited their bill for injunction and relief, on the Sill of November, 1819; complaining by that and several amended bills, of defect in title, and incumbrances-, so that Murray had not and could not convey', and praying for a rescission of the contract, unless the *185 •Murrays should remove the incumbrances, and exhibit a clear title and convey it.
Defects in Murray’s title, complained of by the Jacksons.
Objections to the title removed, in part, pending the suitl
Facts in gelation to the title to the '' land.
The incumbrances and defects of title to the lot complained of were: 1st, the rights of dower in the widow Madison, and others, not conveyed npr released; 2nd, the defect in the conveyance from Gar briel Madison, the patentee, because it purported to be made by an attorney in fact, and there is no power of attorney from Madison; 3dly, that Re-? mus Griffith has commenced his suit in equity against Murrays, Jacksons and others, asserting his superior equity to the lot.
The defendants have procured a relinquishment of the dower rights, pending the suit. And by the decree rendered in this cause against the heirs of Madison, and pf Eleanor Morgan, had at the instance and upon the answer of Murrays, making new parties, and proceeding against them as upon a cross bill, (according to tbe.statutein such cases provided) it might be considered that the title so decreed to Murrays, was clear and ought to he accepted by thp complainant Jackson, if the objection qri accodnt of the claim pf Griffith was out of the way.
The facts in relation to the title pf tips lot and /others, as asserted by the Murrays are these: Gajbriel Madison, having succeeded and recoveredjin a .controversy, the land inoliulipg the town of Hartford, agreed to confirm the tijles to the purchasers of lo.ts held under the adversary claim; and Harrison Taylor, as the attorney or agent pf Gabriel Madison, executed a deed op .the 16th of January, 1797, to Eleanpr Morgap, for lots No. ,53-64-9-79 and twp lots of three acres each, No. 27 and 28. Taylpr had no letter of attorney, but it is proved in this cause tjiat Madison acknowledged Taylpr a§ his agent, in,transacting the business relative to the sales of ¿he town lots. On the 16th pf ,April, 18jS, Eleanor Morgan deeded the lots 53 and 64 to Aquilla Field, reciting as the consideration, a decree of the court of quarter sessions of Ohio, in the year 1802, ordering the jots to be sold, and that Field had become the highest bidder at that sale, and that the decree was in a *186 Suit between Aquilla Field as complainant, and said Eleanor Morgan and John M’Cormack, defendants.
Amended bill alleging that a bill had been filed by Griffith setting up claim.
Griffith’s claim to the property.
On the 15th of January proceeding the deed to Field, he deeded lot 64, improved by Charles Wallace, and on which John Murray then Jived, to David and John Murray.
By the amended bill -of Jacksons, filed at the October term of the Ohio circuit court, they allege, that since filing their original bill, Remus Griffith, claiming the lot sold to them by Murrays, with other lots in the town, had impleaded the said Murrays, the said Jacksons and others; and the bill of Griffith then filed -in the said.court against them and others, is referred to, and a copy of said bill is exhibited, to show how Griffith asserts his equity.
'Griffith claims to have purchased of the heirs of John Morgan; that lots-53 and 64, in the town, had been settled and improved by Samuel Neale, and under the terms and conditions for buildingand improving, agreed upon by Robert Bair.d, who laid off and established the town, said Neale became entitled to the said lots; that Gabriel Madison recovered the land including the town, in a controversy, by virtue of an adverse conflicting patent; and after the ■event of said suit, said Madison confirmed to the settlers the stipulations made with them by Baird, and bound himself to convey the lots 53 and 64 to said Neale, who, before he obtained any deed from Madison, sold to John Morgan, who liad departed this life, .leaving John Morgan, Thomas Morgan, Hannah Morgan and Ellen Morgan his children and heirs at law; after his death, Harrison Taylor made a deed to Eleanor Morgan, the widow of said John Morgan, without any consideration, but voluntarily, and in fraud of the rights of the heirs of Morgan, of which claim the said Eleanor had notice; that said Eleanor had sold to Field, who had notice of the claim of Morgan’s heirs; and he had sold to the Murrays, they having notice of the claim of Morgan’s heirs; and that they had sold to the Jacksons, and they are charged as having notice of the claim of Morgan’s heirs. To this bill by Griffith, the heirs of Gabriel Madison, said Elias and Julius Jackson, *187 Samuel Neale, the heirs of said John Morgan, are also made parties along, with the Murrays and Jack-sons.
Prayer of the ^g^s0°r”ss’sin and Murray’s arrwer.
Murray’s deed from {^¡^lson,s
Decree of the circuit court.
This amended bill of Jacksons, so shewing the claim and bill by Griffith, prays that the defendants, Murrays, may interplead with Griffith, and that they quiet said Griffith’s claim, and procure a reíense of it; this bill the defendants, Murrays,, answeréd in July, 1823, and for defence say, that they purchased without notice, and that they have the legal title by virtue of the deeds before set forth by them; they progress against Madison’s heirs and others, without making Griffith a party..
And at October term ensuing, by an amended answer, the Murrays exhibit a deed from the heirs of Gabriel Madison to them, of the 15th October, 1823, made by George Madison for himseli, and as attorney in fact for the other heirs, three- of whom by said deed, and by the power of attorney filed to support the deed, appear to be married women, resident in this State; and the power of attorney is recorded in Ohio county, upon the certificates endorsed by the clerks of Christian, Jessamine and Montgomery counties, that, the parties had acknowledged the power of attorney, before them.
The suit by Jacksons against Murrays, and of Murrays against the heirs, of Gabriel Madison, Aquilla Field and Wallace were heard in April, 1824; whereupon the court decreed, that the heirs of Madison should convey to the Murrays by deed with special warranty against themselves and all claiming under them, on or before the first of March ensuing, and upon their failure, it is ordered that Charles Henderson be appointed a commissioner to convey for them; that, the said Murrays do convey to Jack-sons by deed, with general warranty, to be executed after the date of the deed of Madison’s heirs to them; that said Murrays, “upon the execution of the deed by them aforesaid, may proceed to have the benefit of their judgment at ¿law, and the injunction of the complainants is hereby dissolved;’ ’ — ‘ ‘that- this suit be dismissed as to the defen *188 dátnts Wallace and Field, and that the complainants recover against the defendants Murrays, their costs in this suit expended.”
Amended decree.
Deeds of the commissioner reported and approved.
Deed of donvej anee by an attorney, constituted by parol only, d.oes not pass the legal title, but may be sufficient id raise an equity.
Griffith’s suit not ended, and his claim hot removed.
By an amended decree it was ordered that the defendants; Murrays, shall not have the benefit of thbir judgment at law, until the deeds directed to be made shall be approved b'v the court, and to that fend the commissioner appointed herein,- is directed to make his report at the next term;
At the July term 1824, the commissioner reported á deed by him pf the 14th May, on behalf of Madison’s heirs to Murrays, anda deed of the 25th June, 1824, from the Murrays' and their wives to Jack-sons, only acknowledged before the clerk of the county court; with the privy examination of thé wives and admitted to i-ecord, which deeds were-approved by the court and ordered to he recorded.
The deed from Gabriel Madison, by Harrison Taylor ás his attorney, ip fact, to Eleanor Morgan, did not pass the legal title, Taylor having no letter of attorney; but nevertheless, that deed is sufficient to raise an equity against Madison, .-because of the proof of his acknowledgment that Táylor \yas his agent in that behalf. To make a contract valid under the statute of frauds and perjuries, it is not ne-cfcssary the authority of the agent should be in writing; if tlite ágreement be signed on behalf of the' principal by a person thereunto authorized, although; by par'o'l; it is sufficient; as decided in Irvine vs. Thompson, 4 Bibb 296; Waller vs. Hendon 5 Viner-contract (H) pl. 45, page 524; Stackpole vs. Arnold, 11 Mass, repts. 27; Miller vs Hayman 1 Yeates; 23; Long vs. Arnold; 11 Mass. 97.
The legal title to part of the interest of the heirs of Madison was acquired by the deed of the heirs of October, 1823; but as to the married women that deed was wholly inoperative. So that the legal title was never completed in Murrays until they obtained the deed of the commissioner as approved by the court. But long before the deed of October, 1823, ■ the Murrays had full notice of the equity asserted *189 By Griffith, and aré therefore purchasers with notice. They have neither produced any release from Griffith, nor would they make Griffith a party to their suit against Madison’s heirs, nor have they shown the decision of the suit by Griffith against them, nor awaited the event, but have suffered the bill of Jacksons and their proceeding against Maidson’s heirs and Field and the heirs of Eleanor Morgan to come to a hearing, leaving thé claim of Griffith not .sufficiently answered or avoided;
Where the1 vended complainant shews a breach of contract by vendor, and asks a rescission or good title, the chancellor will never compel him to take any title not free from controversy—
—Not oi)o in suit.
On reversing a decree for specific performance (rendered on the bill vendee brought for rescission or good title,) because of an adversary claim, mandate for the defendant to be allowed to bring that claimant beFore the court, aucl clear his title.
*189 The decree of a court of equity compelling, a compláinárit to show a bréach of contract by the vendor, and, therefore, asking a rescission of the contract or a good title, should never compel the complainant to accept any other title than such as appears free from controversy; If it appears that the title is controverted, and a bill instituted, that claim should be extinguished, or shewn to he decided, barred or released, before the chancellor compels the complainant to accept a title, and pay the purchase.
Without funning into the doubts and difficulties which grow out of the proceedings against Madison’s heirs, and the derivation of title from Eleanor Morgan, it is sufficient to say, that the Jackson’s were entitled to know the fate of Griffith’s equity asserted by him; in his suit, and to be protected against it. He was compelled by the decree to accept a title not clear, but doubtful, disputed, impleaded and undecided, so far as appears in this suit.
It is therefore ordered and decreed, that the decree of the circuit court, in the cause between the Jacksons, complainants, and Murrays &c; defendants, be reversed, that the cause be remanded with directions to rescind the contract in the bill mentioned, unless the defendants shall, in a reasonable time, make Rémus Griffith a party, by amending their answer and calling him before the court, (according to the statutes in such cásés provided,) or quiet the complainants against his claim; and to retain this cause until the suit by Remus Griffith against the defendants, Murrays and others, shall be decided, if not already done; and fob such other and farther
Crittenden, for plaintiffs; Mayes, for defendants.
proceedings herein as are consistent with the principles and usages of equity.
And it is farther decreed and ordered that the defendants pay to the' plaintiffs their costs in this court in this behalf expended.