## Miller v. Commonwealth.

(Decided December 18, 1923.)

### Appeal from Pike Circuit Court.

1. Criminal Law—Officer Issuing Search Warrant Proper Witness to Prove Loss.—The officer issuing a search warrant, and before whom it is returned, is its proper custodian thereafter, and if it should be lost or misplaced he is the proper witness to prove such loss and his inability to find it; but any one who is familiar with the contents of the paper may also testify in reference thereto.

2. Searches and Seizures—Search Warrant Must be Signed by Officer and Not by Some One at His Request.—A search warrant purporting to be issued by county judge must be signed by him, and is void where signed for him by some one else in his presence and at his request.

3. **Criminal Law—Evidence Procured Under Void Search Warrant Incompetent.**—Evidence procured under an invalid search warrant is incompetent.

ROSCOE VANOVER and J. M. BOWLING for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The defendant was prosecuted in the Pike circuit court on the charge of the unlawful sale of intoxicating liquor and his punishment fixed at a fine of $300.00 and sixty days' imprisonment. On this appeal his only complaint is error of the court in admitting incompetent evidence, the reason assigned being that it was procured through the medium of an illegal search warrant.

It appears that the deputy sheriff was in possession of certain information relating to defendant's business and that he accompanied a U. S. commissioner to the office of the county judge of Pike county for the purpose of making an affidavit to that effect and of procuring a search warrant to search defendant's property. The county judge was busy but directed the commissioner to write out an affidavit and fill in the blanks in the search warrant, and this the latter did. The affidavit was read by the commissioner and oath administered to the sheriff by the county judge, but he was still busy and remarked that he did not have time to sign the jurat or the warrant and told the commissioner to sign his name to those papers, and the latter did so.

Acting under this warrant the sheriff searched the residence of defendant and found sixteen gallons of liquor. On the trial the sheriff was asked as to finding the liquor, to which defendant's counsel objected and demanded the warrant and affidavit for the inspection of the court. It was proved by the county judge, sheriff and commissioner that each of them had had custody of those papers at some time subsequent to the execution of the warrant and each one testified that he had made diligent effort to find same, but was unsuccessful. Thereupon, over the objection and exception of defendant, the commissioner was permitted to testify as to the contents of both papers, and the sheriff as to what he found in making the search.

It has been held by this court that the officer issuing the warrant and before whom it is returned is its proper custodian thereafter and if it should be lost or misplaced that he is the proper witness to prove such loss and his inability to find it. Craft v. Com., 196 Ky. 277.

However, this does not mean that after such loss is established that no one else is permitted to testify as to the contents of the lost paper; indeed, under such circumstances, we think anyone who is familiar with the contents of the paper may then testify in reference thereto, and that the action of the court in this respect was not erroneous.

A more serious question arises as to the signing of those papers. Concededly in private business, as a general rule, whatever one may do in person may be done by someone else for him at his request and direction, so that "where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own and is sufficient to give the same validity to the instrument as though written by the person himself." 36 Cyc. 451; Irvin v. Thompson, 4 Bibb 295.

Our statute requires the name of a surety to be written by him in person and other exceptions may exist, but whatever may be the rule in reference to private business we do not think it should be applied to the signatures of public officials. The law provides that certain of these may have deputies, each possessing power to sign official papers in the name of his principal. It also provides the manner in which such deputies may be appointed and qualified and the manner in which they shall exercise that authority, thus manifesting the greatest care to preserve inviolable such signatures.

Except as above suggested, if the signature of a public official could be made by anyone in his presence and at his direction the door would be opened to all manner of disputes and fraud as to the official character of such instruments and would be attended with great danger to the public service.

In the state of Maine there is a statutory rule of construction as to acts of public officials directing that "when the signature of a person is required he must make it or his mark."

In a case where a constable had directed a bystander to sign his name to a return on a notice the supreme court of that state held this invalid, saying:

"This return is an essential preliminary to a legal meeting. It is the legal evidence that it has been called according to law. It is conclusive upon the rights of all. It, therefore, becomes a very important public document. The officer making it is responsible for its truth and correctness. It requires no argument to show that it was never in the contemplation of the lawmakers that official certificates or returns, which the law requires of those holding certain offices, might be signed by attorney or agent, or that they could have any legal validity unless signed by the officers so that they should bear his own handwriting. There may be cases, unquestionably, where the signature is made by a third party, at the request of the officer, in good faith and with honest intentions by all the parties. And this is, without question, one of such cases. But if we sanction this mode of authentication in such a case we establish a doctrine which will be far-reaching in its effects. It would reach to all cases where any public officer is required to sign any instrument or certificate. The clerk of the court might sign writs, executions and records by proxy. A sheriff might authorize a bystander, perhaps a transient person, when no one else was present, to write the sheriff's name to a return of a levy. The Governor of the state might thus sign a death warrant.

If this action by deputy was sanctioned it would offer temptations to many officers to avoid all liability for their official misdoings or neglects, or mistakes, by taking care to have a third party write his name to his return or certificate, and taking care to have the proof that it was done by his direction, difficult if not impossible." Chaplin v. Limerick, 56 Me. 390.

We have no such statutory rule of construction in this state. But, independent of statutes, the reasons given for the conclusions are so sound and cogent that we think they are applicable here.

It results that the warrant was invalid and the evidence procured thereby incompetent. In the absence of this evidence there was nothing upon which to base a verdict of guilty, and if the evidence is the same upon another trial the court will give a peremptory instruction to find defendant not guilty.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.