# Blackburn v. Commonwealth.

(Decided April 25, 1924.)

## Appeal from Pike Circuit Court.

1. Intoxicating Liquors—Evidence Sufficient to Show Unlawful Possession.—Evidence held sufficient to sustain a conviction for unlawful possession.

2. Searches and Seizures—Failure of Officer to Affix Signature to Jurat of Affidavit for Search Warrant Immaterial.—The mere failure of an officer issuing a search warrant to affix his signature to a jurat did not invalidate the affidavit, under Civil Code of Practice, section 544, the jurat being no part of the affidavit unless made so by statute, being simply evidence that the affidavit was duly sworn to by the affiant.

3. Affidavits—Jurat Not Signed, Other Evidence Admissible to Show Affidavit Sworn to.—Jurat to an affidavit made in support of a search warrant being no part of the affidavit, in the event of its omission the fact that the affidavit was properly sworn to may be proven by other evidence.

4. Criminal Law—Affidavit Being Valid, Immaterial that Court Ordered Jurat Signed During Trial.—Affidavit given in support of a search warrant being valid without signature to jurat, it is immaterial whether action of court in ordering it signed during the progress of the trial was erroneous or otherwise.

5. Intoxicating Liquors—Affidavit Held Sufficient as Against Claim Not Dated.—An affidavit given in support of a search warrant was sufficient though not dated where it was conclusively shown to have been executed immediately before the issuance of the search warrant, and charged present possession of liquor.

6. Intoxicating Liquors—Affidavit for Search Warrant Held Sufficiently Definite and to State Necessary Facts.—An affidavit "that there is now in the possession of F. spirituous liquors, that same is being sold in violation of the prohibition law, and that the said F. has the reputation of being a bootlegger . . . The said F. lives at Damron Town, on the left of the railroad going up Pond creek, in Pike county, Ky.," held sufficiently definite, and to state necessary facts upon which to base a search warrant.

7. Affidavits—Justice Issuing Search Warrant Could Testify as to Loss and Contents.—Justice who issued a search warrant was competent to testify as to its loss and its contents.

8. Intoxicating Liquors—Description of Place to be Searched Held Sufficient.—A description of defendant's premises in a search warrant at the place where he lived, on the left hand side of the railroad going up to Damron Town, was sufficent to comply with Constitution, section 10, and Kentucky Statutes, section 2554a-14,

the record being silent as to the extent of defendant's premises or the existence of other buildings in the vicinity.

DAUGHERTY & BARRETT for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Affirming.

The appellant, Floyd Blackburn, was convicted in the Pike circuit court on the charge of unlawfully possessing intoxicating liquors, and his punishment fixed at a fine of $300.00 and 60 days' confinement in the county jail. He prosecutes this appeal, alleging that the trial court erred in admitting incompetent evidence procured through an illegal search warrant issued upon an insufficient affidavit.

The evidence shows that on or about July 28, 1923, one J. C. Bentley, a federal prohibition officer, Marvin Williamson, a justice of the peace of Pike county, Allen Smith and several others met near the home of appellant and that then and there the following affidavit was signed and sworn to by Smith before Williamson, the justice of the peace:

> "The affiant upon oath states that there is now in the possession of Floyd Blackburn spirituous liquors, the same is being sold in violation of the prohibition law, and that the said Floyd Blackburn has the reputation of being a bootlegger, wherefore a search warrant is demanded. The said Floyd Blackburn lives at Damron Town on the left of the railroad going up Pond creek in Pike county, Kentucky.
>
> "ALLEN SMITH."

Through oversight the jurat was neither dated nor signed, but Williamson, who swore the affiant Smith, forthwith issued a search warrant based upon the foregoing affidavit, describing appellant's property and the premises to be searched and their location as set out in the affidavit. The original warrant was lost, but Williamson testified to its contents and also produced a *copy* of the original, which, however, was not introduced in evidence, appellant's objection thereto having been sustained. Immediately after the issuance of the warrant

Bentley and others, acting thereunder, entered upon a search of appellant's premises. While they were searching the house a boy ran out carrying a half-gallon jar containing a quantity of whiskey. The appellant did not introduce any testimony so that the foregoing facts stand uncontradicted, and in our opinion they are amply sufficient to sustain the verdict of the jury. The court, therefore, did not err in overruling appellant's motion for a peremptory instruction if the warrant under which the search was made was legal. That it was not legal is the only contention seriously urged upon this appeal, and the grounds upon which its legality is questioned are in substance:

1.    The affidavit upon which the search warrant was issued was not signed, or dated by the justice of the peace who administered the oath.

2.    The court erred in directing the affidavit to be signed seven months after the search.

3.    The affidavit is insufficient.

4.    All of the testimony relative to the search of appellant's premises was incompetent because the Commonwealth failed to produce the search warrant, account for its absence or prove its contents.

We will dispose of these complaints in the order above stated.

Appellant questions the legality of the affidavit on which the search warrant was issued because the justice of the peace who administered the oath failed to sign the jurat. That the affidavit was signed and sworn to by the affiant is undisputed. Did the mere failure of the officer to affix his signature to the certificate invalidate the affidavit? We think not. Section 544 of the Code describes an affidavit as follows:

"An affidavit is a written declaration, under oath, made without notice to the adverse party."

Nowhere in our statutes is there any prescribed form for affidavits or certificates of officers, and it has been almost universally held that the jurat is no part of an affidavit unless made so by statute. The rule is thus stated in Ruling Case Law, vol. 1, p. 769:

"The jurat is simply a certificate evidencing the fact that the affidavit was properly made before a duly authorized officer. Although it has been said

that strictly speaking it is no part of the affidavit, but simply evidence that it has been duly sworn to by the affiant, common prudence would dictate that a properly executed jurat be attached to every affidavit. Its omission, however, in the absence of a statute to the contrary, is not fatal to the validity of an affidavit so long as it appears either from the rest of the instrument or from the evidence *aliunde* that the affidavit was in fact duly sworn to before an authorized officer.''

The same doctrine is thus laid down in 2 Corpus Juris 359:

"It has been held in some cases that the jurat is essential to the validity of an affidavit, but the generally accepted doctrine seems to be that the jurat is not such a part of the affidavit proper that its omission will render the affidavit a nullity. According to the latter view it may be shown by extrinsic evidence that the affidavit was in fact sworn to at the proper time and before the proper officer; or a jurat may be added at a subsequent time.''

"The essential thing is,'' as stated by this court in Conner, Sheriff v. Parsley, 192 Ky. 827,

"    . . . was the oath administered, as it appears to have been, and not whether the official administering the oath properly signed his certificate thereto. The validity of the oath administered is not affected by the officer's faulty certificate. . . .''

From the foregoing quotations and the numerous decisions cited thereunder, it will be seen that the great weight of authority holds that the jurat is not a part of the affidavit unless made so by statute, which has not been done in Kentucky. It is simply evidence of the fact that the affidavit was duly sworn to by the affiant, and in the event of its omission the fact that the affidavit was properly sworn to may be proven by other evidence. That was done in the case at bar by the uncontradicted testimony of the officer who administered the oath and who likewise upon the strength of that oath issued the search warrant under which appellant's premises were searched. The sole purpose of the affidavit in question

was to furnish the justice of the peace with reasonable grounds for believing that an offense was then being committed by a specified person at a designated place. To hold the affidavit invalid under the circumstances of this case would seem to us a travesty.

Having reached the conclusion that the affidavit was valid, it is unnecessary to discuss appellant's complaint of the lower court's action in ordering it signed during the progress of the trial  The affidavit being valid, it is immaterial whether the action of the court was erroneous or otherwise.

It is further urged by counsel that the affidavit is insufficient because it is not dated and does not definitely state the necessary facts upon which to base a search warrant.  With this we cannot agree.  It is conclusively proven to have been executed on July 28, 1923, immediately before the issuance of the search warrant, and that this occurred at Damron Town near the home of appellant in Pike county, Kentucky.  It sets out the fact that there is now in possession of Floyd Blackburn spirituous liquor, that the same is being sold in violation of the prohibition law.  It is not simply the expression of opinion or the mere repetition of a rumor; it is a direct charge of the commission of an offense based upon the actual knowledge of the person making the charge.  We have heretofore held such an affidavit sufficient.  In the case of Mattingly v. Commonwealth, 197 Ky. 587, this court said:

"Of course all the courts hold that if the affiant states, as a fact, that the person referred to has committed a named offense, or that the place or places to be searched contain evidence sought to be obtained it will be sufficient."

That the affidavit involved in this case, and which may be found near the beginning of this opinion, fails in any respect to conform to the rule above set out, cannot be successfully contended.

The remaining ground for a reversal urged by appellant is based upon the charge that the Commonwealth failed to produce the search warrant, account for its absence or prove its contents.  This contention is wholly untenable in the light of the testimony, the competency

of which cannot be questioned. In the recent case of Miller v. Commonwealth, 201 Ky. 423, this court said:

"It has been held by this court that the officer issuing the warrant and before whom it is returned is its proper custodian thereafter, and if it should be lost or misplaced that he is the proper witness to prove such loss and his inability to find it. Craft v. Commonwealth, 196 Ky. 277. However, this does not mean that after such loss is established that no one else is permitted to testify as to the contents of the lost paper; indeed, under such circumstances, we think anyone who is familiar with the contents of the paper may then testify in reference thereto. . . ."

The same rule is laid down in the case of Bates v. Commonwealth, 197 Ky. 692.

In the case at bar the Commonwealth proved by the justice of the peace who issued the warrant that the warrant was lost, that he could not find it, but had a copy and remembered the contents of the original; that he issued it for his (appellant's) residence and personal possessions; and when asked what, in substance, was in it, he testified as follows:

"I described his property and demanded the officers to search his premises and his personal possessions and in the description I said he lived on the left hand side of the railroad going up to Damron Town."

Appellant contends this description is not sufficient. We think it is, and under the facts of this case it fully measures up to the requirements of section 10 of the Constitution and section 2554a-14 of the statute governing search warrants which provides that the place to be searched be described as nearly as may be. Manifestly, just how nearly a place may be described depends largely upon the nature, location and environment of the place itself as proven in each particular case. The record in this case is silent as to the extent of appellant's premises; whether it consisted of more than a mere isolated dwelling, we are unable to gather from the testimony; nor does it apear that there was any other dwelling or building of any character on the left-hand side of the railroad going up to Damron Town or anywhere in that vicinity.

In short, there is nothing to indicate that the description is not as accurate and minute as the circumstances and surroundings warranted; and we do not feel authorized to hold that it was not sufficiently definite to describe the premises to be searched.

Perceiving no error in the record prejudicial to the substantial rights of the appellant, the judgment is affirmed.