Donald E. CHAMBERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 47656.

Court of Criminal Appeals of Texas.

March 20, 1974.

Rehearing Denied April 17, 1974.

Lee A. Chagra, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and William B. Hardie, Jr., Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellant was convicted, in a trial before a jury, of murder with malice. Punishment was assessed by the court at life imprisonment.

In appellant's fourth ground of error, he contends that the evidence of the accomplice witness Munnerlyn was not sufficiently corroborated by other evidence tending to connect appellant with the offense.

The record reflects that at about 7:00 or 7:30 A.M., December 24, 1972, Robert Munnerlyn contacted agents of the Federal Bureau of Investigation in El Paso, and told them that he had during the night of December 22 participated in the killing of two men in El Paso County. County officers were called into consultation, and at about noon Munnerlyn guided a group of officers to a site northeast of the City of El Paso, where they found a recently dug shallow grave containing the dead bodies of two men, later identified as the deceased Ray Tarver and his brother Mel Tarver. Each had been killed by buckshot fired from a shotgun. Officers took Munnerlyn to the courthouse, and started taking a statement from him. He indicated a group known as the Bandido Motorcycle Club. At 5:00 P.M., while the statement was being taken, officers were sent to keep a surveillance at an address given by Munnerlyn as appellant's residence, where they were told appellant and the members of the club kept a large number of guns and ammunition. An assistant district attorney was called to the courthouse to assist in the investigation.

While the officers were still talking to Munnerlyn, the officer on surveillance phoned in that it appeared that the group in the residence were loading a panel truck, and were leaving. Officer Timmons, in charge of getting Munnerlyn's statement, and Assistant District Attorney Baker both testified that unless they hurried they might lose the opportunity of confronting appellant and the others in the house implicated by the informant. A search and arrest warrant was prepared with an affidavit by Timmons to which was attached the informer's statement, and this was presented to Justice of the Peace Snooks, who issued the warrant.

As a result of the search under the warrant, appellant and eight other men in the house were arrested and a number of weapons, including a shotgun, an M-1 semi-automatic rifle, ammunition, a blood-soaked blanket, burned wallets and parts of

fired shotgun shells, a shovel and other items were seized.

There was evidence independent of the accomplice witness that the deceased Tarver brothers were engaged in illicit drug business. On the evening of December 22, they returned from Juarez, Mexico to the residence of Frances and Jacqueline Connelly in El Paso where they were staying, with a sack of what the Connellys were told was amphetamine, or "speed." Two men, one known to the Connellys as "Chunky," later identified by Munnerlyn as a member of the Bandidos, came to the house and left with the "speed." Deceased told the Connellys that he had cheated them, having sold them baking powder for $1,000.00 instead of the real drug. These men were seen by non-accomplice witnesses to leave in a beige, or brown, truck with a white or silver colored camper on it.

The informer, Munnerlyn, testified that he was a "prospect"[1] of the Bandido Motorcycle Club, a national organization with national headquarters in El Paso. He came to El Paso on December 20, and went to the residence of appellant, the national head of the Bandidos. On the night of December 22, appellant received a call from "Chunky" and, after the conversation, stated that the dope deal was a "rip-off" and stated that he was "going to get to the bottom of it." Munnerlyn was told by appellant to load a shotgun, carbine, and ammunition into a brown or tan Chevrolet truck with a white camper on it. This truck bore a New Mexico license. Appellant and other members of the Bandidos and Munnerlyn got in the truck and another car, and went to "Chunky's." There they examined the sack of "dope," confirmed that it was actually baking powder and four of the men were sent to get the Tarver brothers.

Munnerlyn told of the two Tarver men being taken to a site in the country, at ap-

pellant's order, where he said he was instructed to dig a grave, and where appellant shot and killed both of the Tarvers with the shotgun. The camper was used to take the men to this site. Appellant rode in the cab. After the killing, the grave was covered with dirt. Upon returning to appellant's residence, Munnerlyn was instructed to destroy by burning certain items, including shotgun shells, the wallets of the victims, and a bloody blanket.

In Cherb v. State, Tex.Cr.App., 472 S. W.2d 273, we stated:

"The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense."

The testimony concerning the sale to "Chunky" and his companions of the baking powder as amphetamine was corroborated by the Connellys. A brown truck with a white camper with "Chunky" in it was seen leaving the Connellys' house by a non-accomplice witness. One of the officers watching appellant's residence shortly prior to the raid observed a Chevrolet "cream colored" truck with an "aluminum colored" camper with a New Meixco license, No. 246 860, parked in the driveway of the residence. Impressions of boot prints taken approximately five feet from the grave matched the soles of boots worn by appellant. A plastic card case identified as being similar to the one carried by deceased was found in appellant's home. Expert testimony was introduced that fired shotgun casings found at appellant's home were expended from the shotgun found there. The partially destroyed wallets and bloody blanket were found in the location where Munnerlyn had told the officers

---

1. A "prospect" is one who is an apprentice; a prospective member who has not as yet earned full membership. A "patch holder" is a full fledged member, who has served his prospect period and proved worthy to wear the Bandido colors.

they would be found. Blood taken from the deceased by a toxicologist matched the blood on the above mentioned blanket.

■ The court submitted a charge on accomplice testimony, and instructed the jury that Munnerlyn was an accomplice as a matter of law. Each case must be considered on its own facts as to whether an accomplice witness has been sufficiently corroborated by facts and circumstances tending to connect the defendant with the offense. O'Donald v. State, Tex.Cr.App., 492 S.W.2d 584. The corroborating testimony need not supply direct evidence, it must only tend to connect the accused with the commission of the offense. Cherb v. State, supra. It is the combined cumulative weight of the evidence which supplies the answer to the test. O'Donald v. State, supra. Minor v. State, 108 Tex.Cr.R. 1, 299 S.W.2d 422; Clary v. State, Tex.Cr. App., 491 S.W.2d 900. We find that the testimony of the accomplice witness was sufficiently corroborated. Appellant's fourth ground of error is overruled.

Appellant, in his first ground of error, states that "the court erred in allowing the introduction of evidence illegally seized under a search warrant which did not meet the Fourth Amendment requirement that such warrant particularly describe the things to be seized." Appellant's complaint is addressed to the scope of the search, and not the validity of the warrant.

■ We have heretofore noted that while Officer Timmons and Assistant District Attorney Baker were taking a written statement from the informer Munnerlyn the officer on surveillance of appellant's home called by telephone and told them that it appeared that the men at the residence were preparing to load the camper-truck and leave. Due to the exigencies of the situation, Timmons and Baker cut short the written statement, Timmons executed an affidavit, to which the abbreviated signed statement of Munnerlyn was attached, seeking a warrant for the search of the premises at 5214 Beautonne, El Paso,

for an automatic carbine machine gun. Munnerlyn's statement recited some of the details of the shooting, stating that he was present and stated that afterwards he had seen the shotgun used to kill deceased and the carbine and ammunition returned to the Beautonne address, and to the best of his knowledge they were still there. Attaching the statement to the affidavit and warrant was sufficient to make such statement a part of the warrant. Phenix v. State, Tex.Cr.App., 488 S.W.2d 759. These instruments were presented to Justice of the Peace Snooks, who had previously served as coroner following discovery of the two bodies. He issued a search warrant authorizing the search of the Beautonne residence of appellant for the automatic machine gun and the arrest of appellant.

The warrant was then executed at the Beautonne Street address. It was understood by Officer Timmons, who headed the search party, that a number of armed men who had recently committed a double murder were in the house, and a number of peace officers participated in the raid.

At the motion to suppress evidence conducted prior to trial, Sergeant Timmons outlined the procedure used by the law enforcement officers in searching appellant's residence. One officer acted as an evidence officer in order to list the items found by the officers in searching the premises. The evidence officer then catalogued the items seized and the time of the seizure. Timmons also stated that, while the search warrant specifically mentioned only the M–2 rifle, officers knew of the existence of and the general location of the shotgun, expended shotgun shells, burned wallets and bloody blanket and of their relevancy to the offense because of statements of the informant.

■ The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasion of governmental officials. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct.

1243, 22 L.Ed.2d 542 (1969); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Haynes v. State, Tex.Cr.App., 475 S.W.2d 739. The requirement that a search warrant be specific prohibits general searches and prevents the vesting of complete discretion in the officer who executes that warrant. Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Haynes v. State, supra.

Appellant's complaint arises from the fact that the incriminating items of evidence relating to the double murder seized from the residence were not named in the warrant and, therefore, said items could not legally be seized. Appellant relies on Coolidge v. New Hampshire, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971) to support his contention that the search was illegal. The principle articulated in *Coolidge*, supra, at 403 U.S. 484, 91 S.Ct. at 2047, is ". . . that the police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest . . ." Coolidge, supra, is, therefore, not dispositive of the case at bar in which a valid search warrant was obtained by the police.

The issue to be decided in this ground of error remains the extent to which evidence seized during a search conducted under an admittedly valid search warrant is admissible if it is not described in the warrant. See Marron v. United States, supra. This narrow issue has been decided in Phenix .v. State, Tex.Cr.App., 488 S.W.2d 759. In *Phenix* we quoted Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968) for the proposition that if the ". . . 'broad language' of Marron

'were unwaveringly applied in every case, it is obvious that there could never be a valid seizure of anything not described in the search warrant. However, the Marron doctrine has generally not prevailed when the search and seizure was considered reasonable under all the circumstances. Many lower and intermediate federal courts, including those of this circuit, have regarded Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), as formulating an exception to the strict language of Marron, thus permitting the introduction of the evidence seized in searches of the type involved in the case sub judice.' 405 F.2d at 257."

The reasoning of Harris v. United States, supra, while related to searches incident to a lawful arrest, applies with equal force to a search made under authority of a valid search warrant. Phenix v. State, supra, Gurleski v. United States, supra.

■ As to appellant's argument that the seized evidence[2] was unrelated to and outside the scope of the search warrant, we note that the law is that mere evidence, as distinguished from fruits or instrumentalities of a crime, may be seized, provided there is a nexus between the items seized and the criminal investigation being undertaken. Warden, Maryland Penitentiary v. Hayden, supra. See also Haynes v. State, Tex.Cr.App., 475 S.W.2d 739. In Warden v. Hayden, the Supreme Court stated the rule as follows:

". . . The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband. There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be

---

2. The record reflects that a seven page evidence inventory list was attached to the return of the search warrant.

required. * * * But no such problem is presented in this case. The clothes found in the washing machine matched the description of those worn by the robber and the police therefore could reasonably believe that the items would aid in the identification of the culprit.

"387 U.S. at 306–307, 87 S.Ct. at 1650."

* * * * * *

"See also Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, 256–260." United States v. Munroe, 421 F.2d 644 (5th Cir. 1970)

In Phenix v. State, supra, the officers went to the defendant's apartment with a search warrant to search for marihuana. In such search, other articles, not mentioned in the warrant but having a connection with the alleged offense, were found and seized. The court, in holding same admissible on the trial, quoted from Bell v. State, 482 P.2d 854 [S.Ct.Alaska (1972)] as follows:

"We think the rationale of Harris is equally applicable to the case where the search and seizure is carried out under the authority of a lawful search warrant. We can perceive no logical or constitutional reason, given a lawful entry pursuant to a search warrant by an officer who is conducting a good faith search, why the officer conducting the search should be prohibited from seizing evidence not described in the search warrant where the searching officer has a reasonable basis for drawing a connection between the observed evidentiary objects and the crime which formed the basis of the search warrant. We think it unrealistic in such circumstances to require the officer to obtain a second search warrant, particularly in a case where the location of the objects are already known and have for all practical purposes effectively been seized by the officer.

"We therefore hold that an officer may seize evidence of a crime even though such property is not particularly described in the search warrant when the objects discovered and seized are reasonably related to the offense in question, when the searching officer at the time of the seizure has a reasonable basis for drawing a connection between the observed objects and the crime which furnished the basis for the search warrant, and the discovery of such property is made in the course of a good faith search conducted within the authorized perimeters of the search warrant."

The issue then becomes whether the officers making the search had a reasonable basis for believing that the seized evidence was reasonably related to the offense which formed the basis for the search warrant. As in United States v. Munroe, supra, this, in turn, takes us to the affidavit underlying the issuance of the search warrant.

■ The statement of the informant attached to the search warrant affidavit indicates that an extensive investigation of appellant was underway in connection with a double murder. The officers were lawfully on the premises under the warrant. They had a reasonable belief from the statement of the informer attached to the affidavit to the warrant that appellant possessed a sizeable arsenal of weapons and ammunition. They knew that incriminating items relating to the murder had been concealed near the premises by the informant. While the search warrant was issued in order to seize an illegal weapon, appellant was connected in the affidavit directly to both the illegal possession of weapons and a double murder. In searching for the illegal weapon, the officers found the many items of evidence; namely, the shotgun, burned wallets and bloody blanket, that corroborated the informant's statement. The nexus between the search for the weapon and the evidence of criminal behavior was thus established. The items of evidence seized by the police were thus subject to seizure.

Appellant's first ground of error is overruled.

■ In his second ground, appellant contends that the court erred in overruling his motion for a new trial because the jury, in their deliberations, improperly examined "items of a testimonial nature" not introduced in evidence.

During the jury deliberation, a juror in examining a shotgun case admitted in evidence found an envelope with a Houston address. Because Munnerlyn had testified that appellant told him he had killed two men in Houston, appellant claims the discovery of this envelope in the guncase belonging to appellant amounted to new evidence corroborating Munnerlyn's testimony.

Foreman of the jury Green testified at the hearing on the motion for a new trial that one of the jurors said immediately when the envelope was found that it had not been introduced in evidence, and that it was placed back in the case and ignored by the jury. He could not recall whether any remarks were made by any member of the jury concerning it.

Another juror testified that when the envelope was discovered the jurors looked over it, and some juror said that it was not in evidence, and it should be disregarded, "put out of our minds and whatever."

We find that the trial court did not abuse his discretion in overruling appellant's contention concerning the envelope. Broussard v. State, 505 S.W.2d 282 (No. 47,163, February 6, 1974), and cases therein cited; Williams v. State, 170 Tex.Cr.R. 595, 343 S.W.2d 263.

■ Appellant in his third ground alleges reversible error in that "members of the jury misunderstood the law in the court's charge to the jury."

During the discussions of the jury, a question arose as to the court's charge on accomplice testimony, whether the jury could properly believe part of the accomplice's testimony and disbelieve part, or whether they must accept all or reject all. The jury sent a note to the court inquiring whether all of the accomplice's testimony must be corroborated. In reply, the court merely referred them to the charge.

Only three of the jurors testified at the hearing on the motion for a new trial. Their testimony raised an issue of fact which the court, as the trier of fact, was called upon to decide. It was within his discretion as to what testimony was most credible. Daniel v. State, Tex.Cr.App., 486 S.W.2d 944. The two jurors who testified that they were affected by a discussion that the law required them to believe all of the accomplice's testimony or disbelieve it all agreed that they did believe part of it and disbelieve other portions. The trial court did not abuse his discretion in overruling this contention. Crawford v. State, 149 Tex.Cr.R. 219, 193 S.W.2d 208; Daniel v. State, supra.

■ Appellant's fifth ground of error contends a pair of boots were illegally taken from appellant while he was in the El Paso County jail, and used in evidence against him, in violation of his rights under the Fourth Amendment. The contention is without merit. Olson v. State, Tex.Cr.App., 484 S.W.2d 756 (on rehearing).

The judgment is affirmed.

Opinion approved by the Court.