**Holly Alissa REESE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 153–85, 154–85.**

Court of Criminal Appeals of Texas, En Banc.

April 30, 1986.

George R. Milner, Gary A. Udashen, Dallas, for appellant.

Henry Wade, Dist. Atty., and Michael A. Klein, Randall B. Isenberg & Kevin Chapman, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was tried jointly with William Michael Ewton, (see *Ewton v. State*, Nos.

212–85 and 213–85, this date decided), and convicted of the offenses of aggravated sexual abuse and aggravated kidnapping. Punishment was assessed at confinement of twenty-five years' and five years', respectively. The Fort Worth Court of Appeals affirmed the convictions in an unpublished opinion. See *Reese v. State*, 2-83–433–CR and 2-83–434–CR (Tex.App.—Fort Worth, December 19, 1984). We granted appellant's petition for discretionary review in Cause No. 153–85 to examine the Court of Appeals' decision which upheld the seizure of evidence made pursuant to an allegedly invalid search warrant, and in Cause No. 154–85 to review the holding that the trial court did not err in refusing to grant appellant's motion to dismiss the indictment.

The facts, as set forth by the Court of Appeals, are not in dispute:

"Complainant, S. M., loaned appellant's boyfriend, William Ewton, some money. About a week later, on April 12, 1983, Ewton called complainant on the phone to invite complainant to come over to his house to discuss repayment of the loan. At trial, complainant testified that he and Ewton were sitting around the kitchen table discussing complainant's club date that evening when Ewton called to appellant to bring him a 'song' or 'record' or something to that effect. Complainant further stated that when appellant entered the room she struck him several times with a galvanized steel chain. Complainant then grabbed the chain at which point Ewton stood up from the table pointing an automatic pistol at complainant and threatened to kill him. Complainant claimed Ewton next hit him repeatedly with the gun and forced him at gunpoint to commit various sex acts while Ewton or appellant took pictures.

"Complainant later escaped and went home before going to the hospital. He told the doctor who examined him that while he had been stopped at a stoplight he had been beaten with fists and chains by a group of strangers.

"A search and arrest warrant was obtained before appellant's home was searched. Over appellant's motion to suppress, photographs developed from film inside a camera seized during the search were admitted into evidence at trial."

■ In her first ground of review, appellant contends that the trial court erred in failing to suppress items seized during the search because the warrant was not supported by a properly sworn affidavit. The affidavit and warrant in question appear on a single sheet of paper: the affidavit on one side and the warrant on the other. The affidavit is signed by the police officer—affiant and below his signature appears the language: "subscribed and sworn to before me by said Affiant on this the 14 day of April, 1983," the blanks having been filled in by hand. However, there is no signature of anyone before whom the affiant swore on the affidavit side, nor are there any blanks on the preprinted form for such signature.

On the reverse side of the paper appears the heading "Search and Arrest Warrant." The warrant has the standard commencement. Following this is the statement:

"WHEREAS, the Affiant whose signature is affixed to the Affidavit appearing on the reverse hereof is a Peace Officer under the laws of Texas and did heretofore this day subscribe and swear to said Affidavit before me (which said affidavit is by this reference incorporated herein for all purposes), and whereas I find that the verified facts stated by Affiant in said Affidavit show that Affiant has probable cause for the belief he expresses therein and establishes the existence of proper grounds for the issuance of this Warrant: ..."

The statement is concluded with this line:
"ISSUED AT 8:50 o'clock P.M., on this the 14 day of April, 1983 to certify which witness my hand this day."

Immediately below this is a signature line designated "magistrate, Dallas County, Texas." It is signed by the issuing magistrate.

It is unquestioned that an arrest or search warrant may only be issued upon a

showing of probable cause, "supported by oath or affirmation." Amendment IV, United States Constitution; Article I, Section 9, Texas Constitution; Article 18.01, supra; *Barnes v. State*, 504 S.W.2d 450 (Tex.Cr.App.1974); *Hall v. State*, 394 S.W.2d 659 (Tex.Cr.App.1965); *Jones v. State*, 568 S.W.2d 847 (Tex.Cr.App.1978), cert. denied 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352. The affidavit must furthermore set forth sufficient circumstances to enable a magistrate to make an independent judgment of the validity of the affiant's belief that the issuance of the warrant is justified. *Frazier v. State*, 480 S.W.2d 375 (Tex.Cr.App.1972). The affidavit is also important because it acts as a mechanism by which a responsible public officer's integrity is ensured by making the affiant legally responsible for any statements of fact relied upon by the magistrate who issues the warrant. See *Burke v. Satterfield*, 525 S.W.2d 950 (Tex.1975).

It is also clear that a document must be sworn to before it can be said to constitute an affidavit. *Esquivel v. State*, 595 S.W.2d 516, cert. denied 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); V.T.C.A., Penal Code, Section 1.07(35). This is generally done in the jurat, which this Court has held is not in and of itself a part of the affidavit. *Alexander v. State*, 123 Tex.Crim. 65, 57 S.W.2d 157 (1933). We have held that when the jurat is facially defective the fact that it was properly sworn to may be shown by other evidence. *King v. State*, 167 Tex.Crim. 440, 320 S.W.2d 677 (1959); *Stanzel v. State*, 112 Tex.Crim. 628, 18 S.W.2d 158 (1929); see also, *Coberly v. State*, 640 S.W.2d 428 (Tex.App.—Fort Worth 1982), pet. ref. 644 S.W.2d 734 (Tex.Cr.App.1983).

Immediately after the magistrate stated that the affiant had sworn to the statement in the affidavit, the affidavit was incorporated by reference into the warrant. In the case of *Faulkner v. State*, 537 S.W.2d 742 (Tex.Cr.App.1976), this Court expressly recognized that a warrant may incorporate an affidavit by reference even when they are not, as here, on the same instrument, but two instruments stapled together. See also *Chambers v. State*, 508 S.W.2d 348 (Tex.Cr.App.1974); *Phenix v. State*, 488 S.W.2d 759 (Tex.Cr.App.1973).

The *Chambers* case involved a search warrant which was insufficient under its own authority to describe the items to be seized with enough particularity to satisfy the Fourth Amendment. For that matter the warrant in *Chambers* also failed to satisfy the requirement of the State Constitution and Article 18.04(2), V.A.C.C.P. This Court held that the warrant, in incorporating by reference the affidavit which *did* so describe the items seized, made the two instruments one document which satisfied the Federal Constitution. The Court implicitly determined that the warrant also complied with the requirement of Chapter Eighteen of the Code of Criminal Procedure and Article I, Section 9 of the State Constitution as well. *Chambers* at 351.

Similarly, the *Phenix* case involved a warrant which in and of itself did not describe with particularity the place to be searched. However, because the warrant incorporated the affidavit which did so describe the place to be searched, this Court held that "this would be sufficient to make the description of the place to be searched *a part of the warrant itself. Phenix* at 764.

The *Faulkner* case involved a warrant with the same deficiency described in the *Phenix* case. In the *Faulkner* case, this Court simply held a warrant incorporating an affidavit affixed to it (in *Faulkner* stapled to it) by reference made the affidavit a part of the warrant. *Faulkner* at 744.

This Court also stated in *Faulkner* that courts, in interpreting affidavits and warrants, must do so in a common sense and realistic fashion and avoid hypertechnical analysis. *Faulkner v. State*, at 744. See also *Powell v. State*, 505 S.W.2d 585 (Tex.Cr.App.1974). It is indisputable that this warrant incorporates the affidavit by reference and thus creates a single document containing both instruments. By the express terms of this document it is clear that the affidavit was properly sworn to before

a magistrate with power to administer oaths.

We, therefore, hold that the Court of Appeals correctly concluded that the affidavit was properly sworn to and subscribed by the affiant.

■ In her remaining ground of review, appellant contends the trial court erred in failing to grant her motion to dismiss the indictment for the offense of aggravated kidnapping. More particularly, appellant contends that the indictment fails to allege which of the statutory means of restraint the State intended to prove. See *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App.1981).

The indictment, in pertinent part, alleges that appellant did:

"... knowingly and intentionally abduct another person, namely, S___ M___ hereinafter referred to as complainant, in that the defendant restrained the complainant, without the consent of the complainant, and with intent to prevent the liberation of said complainant, by secreting and holding the complainant in a place where complainant was not likely to be found and by threatening to use deadly force, namely, a handgun on the complainant, and the defendant did then and there abduct the complainant with the intent to abuse him sexually."

V.T.C.A., Penal Code, Section 20.01(1), defines "restrain" as follows:

" 'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him."

In *Ward v. State*, 642 S.W.2d 782 (Tex. Cr.App.1982), this same contention was raised relative to a charge of false imprisonment. This Court held that any further description of restraint was evidentiary in nature and was not required for notice and the information set forth the offense in ordinary and concise language so as to enable the defendant to understand the particular offense with which he was charged. *Ward,* at 784. We find *Ward* to be controlling here.

■ We would further note that the gravamen of the offense of aggravated kidnapping is the abduction, and that the thrust of the term "restrain" is to "restrict a person's movements without consent, so as to interfere substantially with his liberty" and that there is but *one* definition of restraint. Further, a plain reading of the phrase "by moving him from one place to another or by confining him" indicates that these are mere examples of ways one's liberty may be interfered with and are evidentiary in nature.

Lastly, "abduct," as defined by statute, is one manner and means of restraint:

"...

"(2) 'Abduct' means to restrain a person with intent to prevent his liberation by:

"(A) secreting or holding him in a place where he is not likely to be found; or

"(B) using or threatening to use deadly force."

V.T.C.A., Penal Code, Section 20.01(2).

The indictment shows that the restraint alleged here was "abduction" accomplished by both secreting the victim and by threatening deadly force. Appellant's second ground of review is overruled.

The judgments of the Court of Appeals and the trial court are affirmed as to both convictions.

CLINTON, Judge, dissenting.

The majority opinion states that the Court has held a jurat is not "a part of the affidavit" and, therefore, the fact that a defective *jurat* was actually sworn to may be shown "by other evidence; "[1] it then

---

1. Enigmatic at best, the first "holding" was initially stated less confidently by the Court in *Alexander v. State,* 123 Tex.Cr.R. 65, 57 S.W.2d 157 (1933), *viz:*

"In the case of Order of *Aztecs v. Noble,* 174 S.W. 623 ... our Court of Civil Appeals ...

held that failure to date an affidavit was not fatal. The same thing was held by the Court of Appeals of Kentucky in the well-considered case of *Blackburn v. Com.,* 202 Ky. 751, 261 S.W. 277, in which appears *the apparently sound statement that the jurat is not part of*

cites and discusses decisions to the effect that in a given respect an ailing *warrant* may be cured by reference to the same matter in a proper *affidavit;* finally, comes its conclusion, *viz:*

> "By the express terms of this document [i.e., affidavit and warrant] it is clear that the affidavit was properly sworn to before a magistrate with power to administer oaths."

However, the majority does not explain just how decisions finding that incorporating *a proper affidavit* into a warrant may correct a deficiency of omission in the *warrant* will support the converse proposition that a deficiency of omission in an *jurat to an affidavit* may be supplied by the *warrant.*

Article 18.01, § (b), V.A.C.C.P., provides in pertinent part:

> "*A sworn affidavit* setting forth substantial facts establishing probable cause *shall be filed* in every instance in which a search warrant is requested."

According to former article 23, § 18, V.A. C.S., " 'Affidavit' means a statement in writing of a fact or facts signed by the party making it, and sworn to before some officer authorized to administer oaths, *and officially certified to by such officer under his seal of office.*" Accord: Article 26, § 1. "It is the established rule in Texas that an affidavit ... for search warrant must be made before an officer authorized

to administer the same before search warrant may issue. [citations omitted]." *O'Quinn v. State,* 462 S.W.2d 583, 586–587 (Tex.Cr.App.1970).

It is true that the Court is wont to cant, "A jurat is not part of the affidavit." Whatever the intendment of that expression, that the Court still looked to sufficiency of a jurat to determine that the affiant had been sworn before an authorized officer is shown by one of the cases cited by the majority, containing that very expression—*Alexander v. State,* supra. Thus in that cause it found that the jurat "on its face fails to show that a person clothed with lawful authority swore the affiants to the affidavit." "The affidavit not appearing regular on its face," and finding no other evidence that it was sworn to before a person authorized to administer an oath, the Court held that "the admission of the testimony showing the search under the search warrant *based upon said affidavit* and the results thereof was error." *Id.,* 320 S.W.2d at 678–679.

Thus while a jurat may not be part of an affidavit, a purported "affidavit" is worthless unless a jurat or other evidence shows an oath was administered to the affiant by an authorized officer. Here there is no executed jurat. Apparently the court of appeals agreed, for it deemed recitations in the warrant "sufficient proof" to make the statement an affidavit.

---

the affidavit ... *unless made so by statute.* Nowhere in our statute is it required that the date be inserted in the jurat, or that it contain the number of the precinct or name the state of the jurisdiction. [citations omitted]." *Id.,* 57 S.W.2d at 158.

One statute alluded to by Judge Lattimore was former article 310, C.C.P. 1925, see Historical Note to Article 18.07, V.A.C.C.P., referring to a "written sworn complaint;" the other, former article 415 [now Article 21.12, V.A.C.C.P.], being an affidavit to support an information charging an offense, sworn to before an officer authorized by law to administer oaths. As to the latter, the "holding" is contrary to the more recent decision of the Court in *Shackelford v. State,* 516 S.W.2d 180 (Tex.Cr.App.1974): "To be sufficient the jurat must be dated. An undated jurat vitiates the complaint. Article 2.04, Vernon's Ann.C.C.P." In the event, whatever stems of rationale Judge Lattimore gleaned from the

blue grass of reasoning in Kentucky to find that a jurat does not require a date are slender reeds for supporting a determination that a jurat need not be signed by the magistrate—that being our problem here.

The second "holding" is often attributed to *Stanzel v. State,* 112 Tex.Cr.R. 628, 18 S.W.2d 158 (1929). E.g., *Alexander v. State,* supra, 57 S.W.2d at 158, and *King v. State,* 167 Tex.Cr.R. 440, 320 S.W.2d 677, 678 (1959). One S.F. Hunt had signed two affidavits for search warrant, but the jurat to one recited that it was sworn to by "Carl Utterback;" the jurat was signed by Carl Utterback, justice of the peace. Hunt testified that he signed both affidavits and that Utterback swore him to each. The Court said, "The face of the jurat indicates clerical error which is made certain by Hunt's evidence," *id.,* 57 S.W.2d at 160, citing authorities. There is no such evidence in this cause.

Yet, as I understand it, the majority opinion proceeds on still another theory: if the unexecuted jurat is disregarded, the only material left on that side of the paper is a statement signed by a police officer—the majority calls that statement an "affidavit" —and because the "affidavit" is incorporated by reference behind stock language in a printed form reciting that the officer "did heretofore this day subscribe and swear to said Affidavit before me," "it is clear that the affidavit was properly sworn to before a magistrate with power to administer oaths."[2]

Just as the Court has condemned the practice of using "one model affidavit to fit all situations," *Brown v. State*, 437 S.W.2d 828, 829 (Tex.Cr.App.1968), so also its condemnation has been equally applied to using "a form warrant," *Faulkner v. State*, 537 S.W.2d 742, 744 (Tex.Cr.App.1976). One reason for its condemnation is obvious: since such forms will not readily and unambiguously "fit all situations," using them risks a finding in a given situation that defects of commission or omission render an affidavit or warrant invalid.

What the majority chooses to call a "document" illustrates the risk. Though it echoes an admonishment the Court routinely gives to magistrates and courts that they must interpret affidavits and warrants "in a common sense and realistic fashion and avoid hypertechnical analysis," *Faulkner*, supra, at 744, the majority will not heed the call. To do so would doom the "document."

Common sense and realism tell us that a magistrate did not execute the jurat, that a statement *sans* jurat is not an affidavit, that in incorporating the "affidavit" with unsigned jurat by reference the warrant demonstrates again that the statement is not an affidavit and that on its face the "affidavit" contradicts "boiler plate" recitations in the form warrant that the officer

"did heretofore this day subscribe and swear to said Affidavit before me." Only a strained, hypertechnical analysis enables the majority to defuse the risk—and to save the "document."

Accordingly, I cannot agree to set in motion the mischief inherent in what the majority causes this Court to sanction. Nor do I agree with its treatment of the other ground for review. Indeed, if *Ward v. State*, 642 S.W.2d 782 (Tex.Cr.App.1982) were deemed to control disposition of that ground, we would not have granted review. I merely observe that the majority seems to be confusing elements of kidnapping with those of false imprisonment.

I respectfully dissent.

ONION, P.J., and TEAGUE and MILLER, JJ., join.

---

**2.** The majority points out that the warrant ends with a signature line for "magistrate, Dallas County, Texas," and that it was signed by "the issuing magistrate." Dallas County now has many "magistrates," including ones appointed pursuant to former Article 1918c, V.A.C.S., now, e.g., §§ 54.306 & 54.308, in Subchapter D, Chapter 54 of Government Code. While the latter have some power to administer oaths to witnesses at hearings, neither section specifically authorizes a proceeding nor grants power to issue a search warrant.