In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-469 CR


____________________



KEITH EDWARD BULLOCK, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 411th District Court


Polk County, Texas


Trial Cause No. 15,927






O P I N I O N


 A jury convicted Keith Edward Bullock of a third degree felony offense, assault of 
a public servant. See Tex. Pen. Code Ann. § 22.01 (b)(1) (Vernon Supp. 2002). The
trial court assessed his punishment at five years in the Texas Department of Criminal
Justice, Institutional Division and a $1,000 fine, but probated the sentence and placed
Bullock on community supervision for five years. (1) Bullock primarily challenges the
admission of blood test results into evidence. We will affirm.

 For several months prior to his arrest, Bullock had been under investigation for
narcotic trafficking. On the day of Bullock's arrest, officers had set up surveillance at
Bullock's place of business and also at the residence of a third party. Driving an unmarked
vehicle, Officer Brandan Lovell followed Bullock to the third party's residence, and
continued to follow Bullock when he left, about fifteen minutes later. Because Bullock was
driving erratically, Lovell thought Bullock might be intoxicated and might be in possession
of an illegal controlled substance. Lovell called for assistance from Officer Doug Phillips,
who was wearing a uniform and driving a marked patrol unit. Phillips activated his
emergency lights and stopped Bullock at his business location. During the arrest, Bullock
struck Lovell several times. Lovell testified that Bullock's eyes were glassy and red but
Bullock did not smell as if he had been drinking alcoholic beverages. Lovell advised
Phillips that Bullock was "on something and to cuff him." Bullock struggled as Lovell and
Phillips attempted to handcuff him. The officers did not find any illegal substances on
Bullock or in his vehicle, but obtained a search warrant requiring Bullock to allow a blood
sample to be taken to test for narcotic and alcohol use. 

 Bullock brings four issues. In issue one, Bullock contends the trial court erred in
denying his motion to suppress the results of a blood test because the probable cause
affidavit supporting the search warrant failed to meet requirements of the federal and state
constitutions as well as the Texas Code of Criminal Procedure. In issue two, Bullock
contends the trial court erred in denying his motion to suppress the results of a blood test
because the officer's stop and arrest of Bullock was without a warrant, without probable
cause and violated his rights under the federal and state constitutions and the Texas Code
of Criminal Procedure. In issue three, Bullock asserts the trial court erred in overruling
his objections to the introduction of the blood test and its results before the jury because
Lovell's affidavit failed to comply with the federal and state constitutions and the Texas
Code of Criminal Procedure. In issue four, Bullock maintains the trial court erred in
overruling his objections to the introduction of the blood analysis and alleged drug use
before the jury. 

 The trial court conducted two suppression hearings. The first dealt with the blood
testing issue, while the second considered the traffic stop and arrest. 

 At the first suppression hearing, Bullock asserted that an invalid affidavit, that of
Officer Brandan Lovell, was used to procure the search warrant compelling Bullock to
allow his blood to be drawn. Lovell was the only witness at the hearing on Bullock's
motion to suppress. According to Lovell, the officers continued their investigation for
additional evidence relating to Bullock's condition while Bullock was being taken into
custody for the alleged assault. After Bullock refused to have his blood tested, the officers
got a search warrant. 

 The original search warrant (2) introduced into evidence at the hearing had Lovell's
affidavit attached to it. During his testimony, Lovell conceded his affidavit (3) contained the
word "blood" only in the phrase, "bloodshot eyes." He further admitted that the affidavit
did not explain to the magistrate that the officers were asking for the warrant in order to
obtain Bullock's blood. When asked by defense counsel why the officers needed Bullock's
blood, Lovell stated that they were trying to show that Bullock was under the influence of
some type of narcotic and that the affidavit described that condition for the magistrate. 

 On further cross examination, Lovell testified as follows:


 [Defense Counsel]: Sir, how can you ask in an affidavit - a Judge, how can
you tell a Judge in an affidavit that you want to search
for blood when you don't use the word "blood"?


 [Lovell]: It basically showed what we were wanting it for. I
mean, you keep skipping from the front page. The
front page clearly explains what the requirement was
for this search warrant.


 [Defense Counsel]: Does it? Isn't the first page the warrant signed by the
Judge?


 [Lovell]: Well, it explains what is to be done from the Judge's
signature.


 [Defense Counsel]: Are you aware that the Judge has to read the affidavit
to make a determination from the four corners of the
affidavit what you seek and why?


 [Lovell]: Evidently he felt like that was enough that was on there.


 [Defense Counsel]: My question is: Do you understand that to be the rules?


 [Lovell]: Yes, I do.


 [Defense Counsel]: Can you - again, do you understand that the
requirement is that you need to explain to the Judge
where the individual is and why you want to take it? Is
there anything in this affidavit where you tell us?


 [Lovell]: I was not aware of that we had to do that, no.


On redirect examination, Lovell testified as follows:


 [State's Attorney]: And, of course, the warrant itself incorporated the
affidavit in the body of the warrant, did it not?


 [Lovell]: Yes, it did.


 [State's Attorney]: And I guess you are looking at the two documents in
conjunction with one another, are you not?


 [Lovell]: Correct. One would not work without the other. 

 When we review a trial court's decision on a motion to suppress evidence based
upon a claim that the search warrant was not supported by probable cause, we apply the
"bifurcated" standard of review set out in Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). See Burke v. State, 27 S.W.3d 651, 654 (Tex. App.--Waco 2000, pet.
ref'd). Because probable cause to support a warrant's issuance is determined from the
"four corners" of the affidavit alone, there are no credibility choices to be made by the
trial court in examining the sufficiency of the affidavit to establish probable cause. See
Robuck v. State, 40 S.W.3d 650, 654 (Tex. App.--San Antonio 2001, pet. ref'd); see
Burke, 27 S.W.3d at 654. Thus, we review the trial court's application of the law of
probable cause, as well as the court's ruling on the motion to suppress, de novo. See
Burke, 27 S.W.3d at 654. 

 We must examine the totality of the circumstances when considering whether the
facts alleged in the affidavit establish probable cause. Illinois v. Gates, 462 U.S. 213,
238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); Ramos v. State, 934 S.W.2d 358,
362-63 (Tex. Crim. App. 1996). The issuing magistrate is entitled to draw reasonable
inferences from the facts stated in the affidavit, and we must accord those inferences great
deference. Ramos, 934 S.W.2d at 363.

 Taking blood is a search and seizure under federal and state law. Schmerber v.
California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Escamilla v. State, 556
S.W.2d 796, 798 (Tex. Crim. App. 1977). Absent consent, officers must obtain a valid
warrant to take a blood sample from a defendant in custody. See Davis v. State 831
S.W.2d 426, 440 (Tex. App.--Austin 1992 pet. ref'd).

 A search warrant for evidence must be supported by probable cause: (1) that a
specific offense has been committed, (2) that the specifically described property or items
that are to be searched for or seized constitute evidence of that offense or evidence that a
particular person committed that offense, and (3) that the property or items constituting
evidence to be searched for or seized are located at or on the particular person, place, or
thing to be searched.. . . See Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp.
2002).

 The State argues that the warrant and the affidavit are a "single, stapled and unified
document," that the warrant specifically states that the affidavit is incorporated into the
warrant "for all purposes" and that the warrant specifically directs that Bullock's blood
sample be obtained. In support of its argument, the State relies on Reese v. State, 712
S.W.2d 131 (Tex. Crim. App. 1986); Barnes v. State, 876 S.W.2d 316, 327-28 (Tex.
Crim. App. 1994); United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13
L.Ed.2d 684 (1965). All of these cases are distinguishable.

 In Reese, the question was whether the affidavit was properly sworn to and properly
incorporated by reference in the warrant. Reese, 712 S.W.2d at 132. It did not involve
the proposition that confronts us: whether a probable cause affidavit that lacks the
statutorily required element of a description of the evidence to be obtained may be cured
by an evidence description in the warrant where there is no language in the affidavit
incorporating the warrant and where there is no evidence that the trial court considered the
affidavit to incorporate the warrant. 

 In Barnes, the Court of Criminal Appeals decided that when documents submitted
with an affidavit are not incorporated by reference, they may be implicitly incorporated
if it is established that: (1) the issuing magistrate essentially considered the attached
documents as "part and parcel" of the warrant affidavit; (2) the documents were physically
attached; and (3) the matters contained in the documents were an obvious continuation of
the affidavit. Barnes, 876 S.W.2d at 327. The testimony presented by Officer Lovell at
the suppression hearing does not establish that the magistrate essentially considered the
warrant as "part and parcel" of the affidavit. 

 Moreover, it is well settled law in Texas that the description contained in the
affidavit limits and controls the description contained in the warrant. Riojas v. State, 530
S.W.2d 298, 303 (Tex. Crim. App. 1975); State v. Tipton, 941 S.W.2d 152, 155 (Tex.
App.--Corpus Christi 1996, pet. ref'd). The logical basis for this rule was explained by
the Texas Court of Criminal Appeals in Green v. State, 799 S.W.2d 756 (Tex. Crim. App.
1990):

 The reason for the rule underscores our recognition that a factual affidavit,
upon which the actual instrument of search or seizure must succeed or fail,
is usually more specific and meticulous in reciting the information known to
an affiant than is the warrant which follows. By nature the affidavit is
intended to inform and persuade; the warrant simply executes the
determination of probable cause made by the magistrate. When the question
on appeal relates to descriptive facts supporting the probable cause
determination, a reviewing court may logically look behind the warrant to
the supporting affidavit. But, the same may not be said for all so-called
'technical defects' acknowledged by the State. Due to the nature of such
errors, this Court has held such defects may be cured by explanatory
testimony. We have never held such defects are curable solely by reference
to another document which is itself a part of the controversy. . . . The
danger posed by the possible use of pre-signed warrants or the alteration of
affidavits after issuance of warrants is too great for this Court to consider
such discrepancies a matter of inconsequential irregularity, absent some form
of testimony or other evidence other than the documents in question
themselves, which tends to reveal the error as technical or clerical in nature. 
Without even limited verification of the error as technical defect, the
underlying goal of preventing mistaken execution of warrants is not served.
. . . There being a total lack of evidence corroborating the State's contention
of clerical error, and having rejected the trial court's rationale that the two
documents may be read together absent any such corroboration, we are
constrained to hold the trial court improperly overruled appellant's Motion
to Suppress evidence.


Green, 799 S.W.2d at 760-61 (citations omitted).

 The State also cites United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741,
13 L.Ed.2d 684 (1965) for the general proposition that "affidavits for search warrants must
be tested and interpreted by magistrates and courts in a common sense and realistic
fashion." Id. at 108. Texas courts agree. See Jones v. State, 833 S.W.2d 118, 123-24
(Tex. Crim. App. 1992). But, it is also well settled that "[t]he federal constitution sets the
floor for individual rights; state constitutions establish the ceiling." LeCroy v. Hanlon,
713 S.W.2d 335, 338 (Tex. 1986).

 Texas cases continue to require that an affidavit supporting a warrant to search
under section 18.01(c) must establish all three elements required by that section: i.e., (1)
that a specific offense has been committed, (2) that specifically described property or items 
to be searched for or seized constitute evidence of that offense or evidence that a particular
person committed that offense, and (3) that the property or items constituting evidence to
be searched for or seized are located at or on the particular person, place, or thing to be
searched. See Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp. 2002). 

 In Johnson v. State, 722 S.W.2d 417 (Tex. Crim. App. 1986), overruled on other
grounds by McKenna v. State, 780 S.W.2d 797 (Tex. Crim. App. 1989), the appellate
court found that the supporting affidavit was insufficient where it did not provide
substantial facts establishing probable cause to believe that the items sought would be
located at defendant's apartment. "Absent these underlying facts, the judge was unable
to make an independent determination of probable cause and the evidence seized as a result
of the search should have been suppressed." Johnson, 722 S.W.2d at 422. 

 In Davis v. State, 831 S.W.2d 426 (Tex. App.--Austin 1992, pet. ref'd), the
appellate court found the supporting affidavit failed to establish probable cause where it
did "not even state that the evidence to be searched for and seized is the defendant's blood. 
No facts whatsoever are set out in the affidavit to show that the items to be searched for
are evidence of a crime or show that the person involved committed the offense. The
motion to which the affidavit was attached simply states that appellant is a suspect in the
offense and then requests the blood, hair, and sperm samples." Davis, 831 S.W.2d at 440.

 In Taylor v. State, 54 S.W.3d 21 (Tex. App.--Amarillo 2001, no pet.), the Amarillo
Court of Appeals held that an affidavit failed to establish probable cause for a warrant to
search an appellant's home where the warrant was based on Internet transmission of child
pornography by an particular and the affidavit did not sufficiently connect appellant to that
screen name. Taylor, 54 S.W.3d at 24-26 (discussing the lack of evidence connecting the
screen name to appellant and the lack of evidence showing the contraband was susceptible
to receipt or delivery from the specific site to be searched).

 In Flores v. State, 888 S.W.2d 193, 198 (Tex. App.--Houston [1st Dist.] 1994, pet. 
ref'd), the court found the supporting affidavit was insufficient to establish probable cause
where it incorrectly stated the vehicle to be searched was owned and controlled by the
owners of the suspected premises rather than appellant. At the suppression hearing, the
officer testified (1) he was aware appellant was the actual owner of the vehicle and (2) he
had probable cause to suspect the vehicle contained contraband based on the officer's
surveillance of the vehicle as it arrived and departed from the suspected premises. 
However, the appellate court noted that none of those facts were included within the four
corners of the affidavit or presented to the magistrate and concluded that the court "must
determine the legal adequacy of an affidavit in support of a search warrant by reviewing
it within its four corners." Id. at 197. 

 Thus, we agree with Bullock's arguments presented in issues one, three, and four
that the Lovell affidavit did not show probable cause to obtain his blood and that the results
therefore were before the jury improperly. (4) However, our analysis does not end here. 
Having determined an error of constitutional magnitude occurred, we must now conduct
a harmless error analysis to determine if reversal of Bullock's punishment is appropriate. 
See Tex. R. App. P. 44.2(a). 

 As explained in Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000),
cert. denied, 532 U.S.944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001):

 We must be able to conclude from the record that the erroneously admitted
evidence was, in fact, harmless as to punishment beyond a reasonable doubt. 
An appellate court should not focus on the propriety of the outcome of the
trial. Instead, the appellate court should calculate as much as possible the
probable impact of the error on the jury in light of the existence of other
evidence. While the most significant concern must be the error and its
effects, the presence of overwhelming evidence supporting the finding in
question can be a factor in the evaluation of harmless error. If an appellate
court rules that an error is harmless, it is in essence asserting that the nature
of the error is such that it could not have affected the jury. Stated in an
interrogatory context, a reviewing court asks if there was a reasonable
possibility that the error, either alone or in context, moved the jury from a
state of nonpersuasion to one of persuasion as to the issue in question. 

 

Wesbrook, 29 S.W.3d at 119 (citations omitted). 

 Here, reversal is not appropriate. Bullock was found guilty of assaulting a public
servant. Overwhelming record evidence supports the jury's verdict. Lovell testified that
Bullock struck him [Lovell] several times during the arrest. Both Officer Phillips and
Officer Galloway also testified that Bullock struck Officer Lovell. The defense called no
witnesses to dispute this testimony. 

 In light of this evidence, we do not find that it to be reasonably possible that
admission of the blood test evidence, either alone or in context, moved the jury from a
state of nonpersuasion to one of persuasion on the assault issue. Further, the probated
sentence determined by the jury leads us to conclude the erroneously admitted evidence
was harmless as to punishment beyond a reasonable doubt. Issues one, three and four are
overruled.

 In issue two, Bullock complains that there was no probable cause for his stop and
arrest. He argues that the stop was only a pretext to search his truck. Bullock concedes
that pretextual stops are allowed under Texas law, but argues that the law should be
reviewed and the courts should discourage conduct such as that of the officers in this case.

 Here, Officer Lovell observed Bullock driving at "anywhere between 95-115 miles
per hour." Lovell was in contact with Deputy Phillips and advised Phillips of what he was
observing. Phillips effected the traffic stop. An "objectively valid traffic stop is not
unlawful under Article I, § 9, just because the detaining officer had some ulterior motive
for making it." Crittenden v. State, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995). Issue
two is overruled.

 The trial court's judgment and sentence are affirmed.

 AFFIRMED.

 

 ________________________________

 DON BURGESS

 Justice


Submitted on October 1, 2002 

Opinion Delivered November 27, 2002

Do not publish 


Before Walker, C.J., Burgess, and Gaultney, JJ.

1. The punishment range for a third degree felony offense is not less than 2 years
nor more than 10 years, and, in addition to imprisonment, the individual adjudged guilty
may be punished by a fine not to exceed $10,000. See Tex. Pen. Code Ann. § 12.34
(Vernon 1994).
2. The search warrant, which incorporated Lovell's affidavit by reference, stated in
pertinent part:

 

 WHEREAS, the Affiant whose signature is affixed to the Affidavit
appearing on the reverse hereof did . . . swear to the said Affidavit before
me, which said Affidavit is by this reference incorporated herein for all
purposes, and


 WHEREAS, I find that the verified facts stated by the Affiant in said
Affidavit shows that Affiant has probable cause for the belief expressed
therein and establishes the existence of proper grounds for the issuance of the
Warrant:


 NOW THEREFORE, you are commanded to transport the said
KEITH EDWARD BULLOCK to Memorial Medical Center . . . and cause
a qualified medical technician to obtain a blood sample from . . . BULLOCK
in accordance with accepted medical procedures. It is further ordered . . .
that a qualified medical technician from Memorial Medical Center . . .
obtain by accepted medical procedures a sample of blood from . . .
BULLOCK.. . . 
3. The pertinent portion of Lovell's affidavit provides:

 

 7. Your Affiant shall show BULLOCK displayed an appearance of
being under the influence of a controlled substance. This includes but not
limited to, glassey eyes that were blood shot, unusual strength, and unsteady
on his feet. It is the opinion of your AFFIANT, BULLOCK was a danger
to himself, as well as others. Your AFFIANT did not smell any alcoholic
beverages on BULLOCK. Your AFFIANT shall show BULLOCK operated
a motor vehicle on the public highways in the State of Texas. 
4. We do not consider Bullock's argument the affidavit was defective because of
misrepresentations of falsehoods. Bullock neither presented this argument in his motions
to suppress nor in his arguments to the court at the hearings. Thus, this complaint is not
preserved for our review. Tex. R. App. P. 33.1(a); see Robuck, 40 S.W.3d at 653.