**Richard Glenn LUNA, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–84–323–CR.**

Court of Appeals of Texas, Fort Worth.

Sept. 17, 1986.

Merkle & Cannedy, Marty Cannedy, Wichita Falls, for appellant.

Barry L. Macha, James A. Rasmussen and John W. Brasher, Wichita Falls, for the State.

Before FENDER, C.J., and JOE SPUR-LOCK, II and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from a conviction for capital murder. *See* TEX. PENAL CODE ANN. sec. 19.03(a)(3) (Vernon 1974). The jury found appellant guilty and assessed punishment at life imprisonment.

We affirm.

In June of 1983, Cheryl Graves of 1305 Kemp in Wichita Falls, agreed to pay appellant, Richard Luna, to kill her husband, Randy. She testified that she intended to pay him $13,000.00 for the murder out of her husband's insurance policy proceeds. She testified that, as partial payment, she allowed appellant to charge some Sears tires on her credit card and that she paid him $300.00 and $150.00 during the month of June.

Graves further testified that on October 12, 1983, at 2:00 in the morning, she signaled appellant by flashing the porch light, as pre-arranged. Appellant entered with a shotgun and asked Cheryl what position her husband was sleeping in. He then entered the bedroom and Cheryl heard the gun go off. Appellant, Cheryl, and Daisy, Cheryl and Randy's daughter, then went out to eat and then went to pick up one of appellant's friends, Frank Baladez. Graves testified that appellant and Baladez moved the mattress and the body out to the deceased's van, which bore the lettering of J & M Electric on the side. As the two men were leaving, appellant asked for matches and Graves gave them matches that had "Steak and Ale" written on the side.

Frank Baladez was called as a witness for the State. Baladez testified that appellant had contacted him about helping him out with a "body". Baladez testified that appellant said that "he was giving me money, part of it, he was going to pay me—going to give me five hundred dollars out of it."

Baladez testified that on October 12, at 3:00 a.m., appellant arrived as Baladez was getting off work. Between the front seats of appellant's car, Baladez observed a shotgun. Baladez accompanied appellant, Cheryl Graves, and Daisy Graves back to 1305 Kemp Street. Baladez testified that he and appellant carried the body and the mattress to the van.

Baladez further testified that appellant left the house driving the van; Baladez followed driving appellant's small blue Mercury Capri. Baladez followed appellant to appellant's home on Boren Street, where appellant went in and then came out carrying a gasoline can, which he placed into the van. Baladez followed appellant into Archer County, where appellant dumped the mattress on the side of the road. Baladez followed appellant once again to "some road" near some "oil things" where appellant parked the van. He observed appellant siphoning gas into the gas can and then pouring gasoline all over the inside of the van. After appellant directed Baladez to turn the car around, Baladez moved to the passenger side of the car and the two drove off.

Mark Cullers, a production foreman for American Petrofina, testified that he was working at an oil lease near Three Way Road in Archer County, Texas, and that on October 12, 1983 he noticed a van parked on Three Way Road. When the van was still there the next day, he investigated. He and two workers observed what appeared to be a body in the van.

John McClosky and Ricky Patterson, detectives from the Wichita Falls Police Department, Thomas Rich and Mike Melton, deputies with the Archer County Sheriff's Office, and William Gerth, Texas Ranger, each testified that they were present and participated in searching the van located on Three Way Road. The body in the van was identified as that of James Randy Graves. Two books of matches were found in the van, each with a partially burned cigarette wedged in between the matches. One matchbook bore the lettering of "Steak and Ale". The cigarettes bore the brand name "Salem". The van and the deceased body had a strong odor of gasoline about them.

On October 13, at approximately 12:30 p.m., Ranger Gerth and law enforcement officers went to the home of the deceased on Kemp Street. Gerth testified that they first noticed what appeared to be drops of dried blood outside at the porch at the residence at 1305 Kemp. Upon further investigation, they observed two bloody footprints, one bearing a zigzag pattern.

Approximately 50 minutes later, the deceased's wife arrived at the scene. She gave them permission to search the resi-

dence. Upon searching the interior of the residence, officers noticed a mattress was missing from the box springs in one of the bedrooms. Law enforcement officials seized one set of box springs and a blood splattered headboard from the residence. He also seized a pair of tennis shoes from the wife of the deceased. The shoes had a zigzag pattern.

In his first ground of error appellant contends that there is no evidence or insufficient evidence to sustain a conviction for capital murder in that the testimony of the accomplice, Cheryl Graves, was not sufficiently corroborated by other evidence.

■ In order to support a conviction based upon accomplice testimony, the accomplice witness' testimony must be both material and corroborated by independent evidence tending to connect the accused with that offense. *Holladay v. State*, 709 S.W.2d 194 (Tex.Crim.App.1986); TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). The test of the sufficiency of the corroborating evidence requires that we eliminate from consideration the evidence of the accomplice witness and then examine the testimony of other witnesses to determine whether there is inculpatory evidence which tends to connect the defendant with the commission of the offense. *See Mulder v. State*, 707 S.W.2d 908, 912 (Tex.Crim.App.1986); *Cruz v. State*, 690 S.W.2d 246, 250 (Tex.Crim.App.1985). In applying this test, each case must be considered on its own facts and circumstances. *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim.App.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984).

■ All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary and the corroborative evidence may be circumstantial or direct. *Id.* It is the cumulative weight of the corroboration that must be examined to see if sufficient corroboration exists. *Cooper v. State*, 631 S.W.2d 508, 511 (Tex. Crim.App.1982); *Chambers v. State*, 508 S.W.2d 348, 351 (Tex.Crim.App.1974). The

evidence corroborating the accomplice witness' testimony need not be sufficient to establish the guilt of the accused; it is sufficient if it tends to connect the defendant with the offense. *Marrs v. State*, 647 S.W.2d 286, 287 (Tex.Crim.App.1983).

■ It is not necessary that the accomplice witness be corroborated on all of his or her testimony. *See Moore v. State*, 700 S.W.2d 193, 203 (Tex.Crim.App.1985). Nor must the accomplice witness' testimony be corroborated as to the specific elements that make the crime of murder capital murder. *See Holladay v. State*, 709 S.W.2d 194 (Tex.Crim.App.1986).

We will now summarize the evidence which corroborates Graves' testimony and tends to connect appellant to the offense.

The partially burned cigarettes which were found wedged in between the books of matches, which had been placed in the gasoline soaked van, bore the brand name "Salem". Frank Baladez, who had helped dispose of the body, stated that on the night in question, he believed that appellant was smoking Salem cigarettes.

Robert Blevins, a friend of appellant, testified that, subsequent to the time that the van was found, he and appellant engaged in a conversation concerning news reports of the case. He testified that appellant made the statement that someone had tried to burn the van by putting a Salem cigarette into a match package. Blevins testified that the newspaper article they were discussing contained no mention of a Salem cigarette.

M. Gilliland, medical examiner, testified that the deceased died of a gunshot wound. On November 9, 1983, Ranger Gerth and other law enforcement officials searched appellant's former residence[1] located at 4014 Boren Street and found expended twelve gauge shotgun shells as well as two Salem brand cigarette butts. Larry Fletcher of the Dallas County Institute of Forensic Sciences, testified that shotgun pellets found in the deceased's body came from a twelve gauge shotgun. Frank Baladez tes-

---

1. Appellant and his wife moved in with Cheryl      Graves shortly after the murder.

tified that when appellant arrived to pick him up so that they could go move the body, he observed a shotgun between the front seats of appellant's car.

Graves testified that when appellant and Baladez carried the body of the deceased out to the van, appellant wore surgical gloves on his hands. Frank Baladez testified that after they disposed of the body, he and appellant drove to a restaurant where Baladez disposed of appellant's surgical gloves at appellant's direction. Detective McClosky testified that on November 18, 1983, he and other officers executed a search warrant at 1305 Kemp Street and seized an EMT (Emergency Medical Technician) kit containing plastic surgical gloves belonging to appellant.

Graves testified that prior to the killing of her husband, she purchased tires for appellant's car. She stated that the cost of the tires was a partial advance to be deducted from the $13,000.00 that appellant was to be paid out of the deceased's life insurance proceeds, for the murder of the deceased. Donna Hust, custodian of the records at the Sears Tire Department, testified that their records reflected the purchase of the tires of Sears Tire Department on September 8, 1983. The document reflects that the purchase was made by Cheryl Graves and that the tires were placed on a blue Capri, Texas license plate number YME 278. Frank Baladez identified photographs of the car appellant and Graves arrived in when they came so that he could help move a body, as being appellant's car. The photographs show a small blue Mercury Capri bearing Texas tag number YME 278. The car has two bumper stickers on the rear window, one sticker is a MADD sticker and the other shows a symbol of a glass with a red mark through it.

Larry Wayne Berghoefer testified that he was a route salesman for the Taystee Bread Company. He testified that on October 12, 1983, at 4:00 a.m., he noticed, while on his way to work, that a green van with a J & M Electric Company lettering on the side was turning and driving down Boren Street. A small blue Mercury followed behind the van. Berghoefer observed the van and the small blue car stop in front of the address at 4014 Boren Street, appellant's former address. Berghoefer positively identified the van as being the van found out on Three Way Road in Archer County. Berghoefer recognized the small blue car as being the car that regularly parked in front of the address at 4014 Boren Street. He identified photographs of appellant's car and further stated that the car he had observed that morning had bumper stickers on the back, one being a MADD bumper sticker and the other being a sticker with a symbol of a glass with a red "X" on it.

Graves testified that appellant and Baladez came in after the murder and removed the mattress the deceased was lying on and put it in the van. Frank Baladez testified that he and appellant dumped the mattress on the side of the road in Archer County. Upon searching the interior of the residence at 1305 Kemp, officers noticed a mattress was missing from the box springs in one of the bedrooms.

Aundra Cox, owner and operator of a furniture store, testified that she was present in the furniture store on the morning of October 13, 1983, the day after the murder. She identified appellant as the individual who accompanied Graves to the store that morning. Graves and appellant purchased a mattress. About forty-five minutes later, Graves called and cancelled delivery of the mattress. Bill Cox, co-owner and operator of the store, testified that on October 15, 1983, a gentleman identifying himself as Richard Luna, came in and asked for the refund on the mattress set. Mr. Cox identified appellant as the individual who was there that day. No refund was issued until five or six days later when appellant returned and was given a refund check, made payable to Cheryl Graves.

A mattress recovered in Archer County was delivered to Serologist Sally Williams by Ranger Gerth and was found to be stained with blood of the same type as the deceased's.

■ Viewing the evidence in the light most favorable to the jury's verdict and the rules discussed above, we conclude that the evidence independent of the accomplice witness tends to connect the appellant with the crime charged and is sufficient to corroborate the accomplice witness' testimony. *See Mitchell*, 650 S.W.2d at 808. Appellant's first ground of error is overruled.

In his second ground of error appellant contends that the trial court erred in overruling his objection that the State's jury argument constituted a comment on appellant's failure to testify. The argument made by the State's attorney is as follows:

> MR. RASMUSSEN [State's Attorney]: ... In the kitchen, Randy's wife goes to see what position he's laying in in [sic] the bed, comes back and tells the killer how he's laying. And then he walks— walks through the front room, walks into the bedroom where his sleeping victim lies on this mattress. He stands there in the bedroom, lowers the barrel of the shotgun, he lowers it to about five inches from the head of his victim—
>
> MR. MERKLE [Appellant's Attorney]: Your Honor, I'm going to object to counsel pointing at the defendant and making an argument that's inflammatory and outweighs any probative value, it's improper argument.
>
> THE COURT: Overrule.
>
> MR. RASMUSSEN: And then he pulls the trigger, and like that, there's one less person that's on earth. One less employee of Charlie Jones, there's one less family member. Cheryl Graves is free. Daisy Graves has one less father. *And that's where the testimony ends.* The testimony ends with that man, that man there—
>
> MR. MERKLE: Object to counsel's argument in that it constitutes a comment on the defendant's failure to testify, we would object to it.
>
> THE COURT: Overrule. [Emphasis ours.]

■ Arguments to the jury by counsel must be confined within the area of summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973). TEX.CODE CRIM.PROC. ANN. art. 38.08 (Vernon 1979) states that any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be eluded to or commented on by counsel in the cause. The test to be employed and determining whether the prosecuting attorney violated article 38.08 is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *See Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Crim.App.1984). It is not sufficient that the complained of argument might be construed as an implied or indirect allusion to the defendant's failure to testify. *See Rogers v. State*, 598 S.W.2d 258, 264 (Tex.Crim.App.1980).

■ When the complained of argument is taken as a whole and viewed in the context in which it was said, it is clear that the argument was not manifestly intended or was of such character that the jury would naturally and necessarily interpret it as a comment on the accused's failure to testify. The argument was simply a summation of the evidence, and such an argument falls within the defined scope of proper jury argument. *See Todd v. State*, 598 S.W.2d 286, 296–97 (Tex.Crim.App.1980). Appellant's second ground of error is overruled.

In his third ground of error appellant contends that the trial court erred in overruling appellant's objection that the prosecutor stated his personal opinion on the case. The State's attorney, Mr. Levy, during his final argument made the following statement:

> [MR. LEVY:] Now, I hesitate to go over these things with you, but you

know, you're—I'm always—we've got a heck of a case. This is a—

MR. MERKLE: I object—

MR. LEVY: —case—

MR. MERKLE: —to counsel interjecting his own personal opinion—

MR. LEVY: —from the evidence.

THE COURT: Condition it on the evidence.

MR. LEVY: From the evidence, from this evidence we have a tremendous case. . . .

Appellant contends that this argument was an indirect attempt by the prosecutor to give his personal opinion of the facts of the case and as to the guilt of the accused. Appellant contends that the prosecutor did not condition his argument to the evidence until after the court told him to do so, and that the trial court should have instructed the jury to disregard any personal opinion of the State's counsel.

[8, 9] It is true that it is not proper for counsel to inject personal opinions into argument lest they convey to the jury the idea that they have a basis for their conclusions in addition to evidence before the jury, although counsel may draw reasonable deductions "from the evidence." *See Wyatt v. State*, 566 S.W.2d 597, 604 (Tex. Crim.App.1978). However, we note that in this case, after counsel objected, the court instructed the prosecutor to confine his remarks to the evidence. No adverse ruling was obtained. Therefore, nothing is presented for review. *See Johnson v. State*, 604 S.W.2d 128, 132 (Tex.Crim.App. 1980); *Graham v. State*, 566 S.W.2d 941, 954 (Tex.Crim.App.1978) (en banc). Appellant's third ground of error is overruled.

In his fourth and fifth grounds of error appellant contends that the trial court erred in admitting the State's Exhibits 6 and 57, photographs of the deceased, because they had no probative value and only served to prejudice the jury because of their inflammatory nature. Appellant contends that State's Exhibit 6, a photograph of the deceased as he was found in the van, was the "third of a series" of photographs of the body in the van and was inadmissible because the State had already offered Exhibits 4 and 5 which were photographs of the body. Appellant complains that the Exhibit 6 was not needed because the witness, Charles Jones, had already identified the body as that of the deceased.

Testimony concerning the scene of a murder, including a description of the body, is admissible to throw light on the transaction and reveal its general nature. *Heckert v. State*, 612 S.W.2d 549, 551 (Tex. Crim.App.1981). If a verbal description of the body and scene is admissible, then a photograph depicting the same is admissible. *Id.* It has been stated that a photograph is merely a graphic portrayal of oral testimony. *Id.*

State's Exhibit 6 was the only photograph introduced which showed the face of the deceased. Exhibits 4 and 5, which appellant essentially claims are "duplicates", do not show the face or body of the deceased, but merely show a form wrapped in a sheet. State's Exhibit 6 was used during the testimony of Charles Jones to identify the body, show the location of the wound, and depict the actual condition of the body when found. There was no error in its admission.

Concerning State's Exhibit 57, a close-up facial shot of the deceased showing the gunshot wound to the skull, appellant contends that because he had never introduced any evidence which would contradict the fact that the deceased died of a gunshot wound, the picture had no probative value.

Appellant was indicted for causing the death of the deceased "by shooting him with a shotgun." Appellant plead not guilty to the charge. Therefore, each and every element in the allegation was put in issue and the State was required to prove these elements. *See Ex parte Williams*, 703 S.W.2d 674 (Tex.Crim.App.1986). Accordingly, evidence that a shotgun was used was admissible. Because verbal descriptions of the body showing that a shotgun was used are admissible, a photograph depicting the same is admissible. *See Hec-*

*kert,* 612 S.W.2d at 551. Appellant's fourth and fifth grounds of error are overruled.

In his sixth ground of error appellant contends that the trial court erred in failing to instruct the jury that Frank Baladez was an accomplice witness as a matter of law. The trial court instructed the jury to make a finding concerning whether Baladez was an accomplice. Where there is doubt as to whether a witness is an accomplice, submitting the issue to the jury is sufficient even though the evidence seems to preponderate in favor of the conclusion that the witness is an accomplice as a matter of law. *See Brown v. State,* 640 S.W.2d 275, 279 (Tex.Crim.App.1982); *Carrillo v. State,* 591 S.W.2d 876, 882 (Tex. Crim.App.1979). Appellant's sixth ground of error is overruled.

The judgment is affirmed.