Opinion issued June 10, 2010


















In The
Court of Appeals
For The
First District of Texas







NO. 01-08-00535-CR
____________

JORGE ALBERTO RAMIREZ, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1139958
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Jorge Alberto Ramirez, guilty of the offense of capital
murder


 and assessed his punishment at confinement for life without parole. In seven
issues, appellant contends that the evidence is legally and factually insufficient to
support his conviction and the trial court erred in excluding evidence relevant to the
credibility of an accomplice-witness, restricting the scope of cross-examination of the
accomplice-witness, instructing the jury on the law of parties and accomplice-witness,
restricting his closing argument, and overruling his objections to the State’s improper
jury argument.
          We affirm.
Background
          Houston Police Department (“HPD”) Homicide Sergeant J. Wood testified that
on July 19, 2007, he was dispatched to an apartment complex to investigate the
murder of the complainant, Torrin Farrow. Upon his arrival, Wood saw the
complainant’s green four-door Cadillac up against a fence with the driver’s door
open. The body of the complainant, who had been shot in the head, had been
removed from the car by emergency services personnel. Inside the car, Wood saw
blood and other “bodily fluids” on the driver’s seat, a drop of blood on the back seat,
a small blood spatter on the arm rest of driver’s door, and a few drops of blood spatter
on the bottom part of the dashboard to the left of the steering wheel. There was no
blood spatter in the front passenger seat area. Wood opined that the blood spatter
indicated that the complainant’s body had been thrown forward and then jerked
backward when his car hit the fence. He noted that the the blood found on the
dashboard, driver’s seat, and backseat could have come from such a motion. Wood
recovered a cellular telephone and a baggie of pills lying on the ground outside of the
complainant’s car. 
          On cross-examination, Wood explained that he found no blood on the
windshield, the top of the dashboard, or the console of the complainant’s car. Also,
because there was no exit wound on the complainant’s head to create forward spatter,
Wood could not determine the direction from which the shot that killed the
complainant was fired.
          HPD Officer D. Lambright testified that he inspected the complainant’s car and
recovered, from the back seat behind the front passenger seat, a “.380 cartridge
casing” and, from the center console, a prescription bottle in the name of Jackie
Farrow, the complainant’s mother, containing thirty Xanax pills. 
          HPD Homicide Sergeant T. Huynh testified that he watched a videotape made
by the apartment complex’s security system. The videotape shows the complainant’s
car arriving at the complex, braking briefly, and then continue moving. It then shows
a person jumping out of the door from behind the driver. Huynh determined that the
cellular telephone recovered from the scene belonged to the complainant and noted
that in the three hours before the complainant had been shot twenty-two calls were
made from or received by the telephone and another telephone owned by Noel
Alvarez.
          Sergeant Huynh later interviewed appellant, who told Huynh that he did not
take Xanax because it gave him seizures. Appellant stated that on the day that the
complainant was shot, he and Alvarez had met with the complainant in his car so that
Alvarez couuld buy Xanax from the complainant. Although he admitted that he had
been in the back seat of the complainant’s car while Alvarez sat in the front passenger
seat next to the complainant, he stated that he sat behind Alvarez, not the
complainant. Appellant also stated that he and Alvarez were not with the
complainant when he was shot. He explained that he had learned about the
complainant’s death from a friend the day after the shooting. Appellant maintained
that he and Alvarez were together that whole day and neither he nor Alvarez had shot
the complainant.
          Alvarez testified that he was with appellant and the complainant at the time of
the shooting. Alvarez explained that he had been buying Xanax from the complainant
and on July 19, 2007, he was at appellant’s apartment when appellant told Alvarez
that he wanted some Xanax. Alvarez called the complainant from his cellular
telephone to set up the transaction for appellant. Alvarez and appellant then met the
complainant, who had driven his car to appellant’s apartment complex. Alvarez got
into the front seat of the complainant’s car, and appellant got into the back seat
behind the complainant. The complainant then gave a “little Ziploc” baggie of Xanax
to Alvarez, and he passed it to appellant. Appellant told the complainant to drive his
car into the parking lot of another apartment complex. As the complainant drove
through the parking lot, Alvarez heard a gunshot. He explained that he had been
looking forward. The complainant had also been looking forward with his head
turned a little to the right. When Alvarez turned towards the sound, he saw the
complainant lean forward and raise up his hands, but did not see appellant with a gun. 
Appellant, with the baggie of Xanax, jumped out of the car while it was still moving,
and Alvarez did the same. 
          As they ran towards appellant’s apartment, Alvarez was “real nervous” and
asked appellant why he shot the complainant. Appellant told Alvarez to calm down,
and, when they went inside appellant’s apartment, Alvarez saw appellant hide “like,
a .380 automatic” in a suitcase in his closet. 
          Alvarez conceded that he initially told Sergeant Huynh that he did not know
who had shot the complainant, but later stated that appellant was the shooter. Alvarez
admitted that he had a state jail felony conviction for possession of cocaine, did not
want to go back to jail, and would “do anything to avoid going to prison for the rest
of his life,” but he denied that he would lie. 
          Christopher Figueroa testified that he and appellant were held in the same cell
block in the Harris County Jail pending trial of their respective cases. Appellant told
Figueroa about the shooting, explaining that he and Alvarez wanted to “get high.” 
Because they had no money, they planned to rob the complainant by Alvarez taking
his “Xanax, his money, and his jewelry,” and appellant shooting him. After they set
up a meeting to buy a bottle of Xanax, they joined the complainant in his car. The
complainant handed a bottle of Xanax to Alvarez, and appellant pulled a gun from
“his pocket” and shot the complainant once in the back of the head. Appellant then
jumped out of the car from behind the complainant and ran away. Appellant
explained that he killed the complainant because he would have been able to identify
who had robbed him. Figueroa admitted that, at the time of his testimony, he was
under indictment, accused of committing three separate offenses of aggravated
robbery, and facing five years to life in prison. He also admitted that he had initiated
contact with the district attorney through his attorney to discuss appellant’s
admissions rather than contacting HPD directly. 
          HPD Officer J. Sanchez testified that he arrested appellant at his apartment. 
While searching appellant’s bedroom, Sanchez found forty-five nine millimeter
rounds of ammunition and a pill bottle with “three or four” Xanax pills.
           Harris County Assistant Medical Examiner Dr. Albert Chu testified that he
conducted an autopsy on the complainant’s body. He noted a gunshot entrance
wound on “the right side back” of the complainant’s head, but no exit wound. An x-ray of the complainant’s skull revealed a bullet fragment with jacket attached lodged
in his brain. Dr. Chu explained that the bullet traveled from back to front and right
to left from its entry point, which was slightly to the right of the center of the back of
the complainant’s head. Dr. Chu could not opine about the position of the
complainant’s head or its distance from the firearm when it was fired.
          HPD firearms specialist M. Al-Mohamed testified that the casing recovered
from the back seat of the complainant’s car was a “fired .380 auto cartridge case.” 
He explained that most semi-automatic pistols, like the .380 handgun, “eject [their
casings] to the right” because “the majority of people are right-handed” and a casing’s
trajectory may be altered by objects in its path.
          Sacramento Soria, a friend of appellant, testified that he saw Alvarez twice
with what might have been a .380 handgun in May or June of 2007. Soria admitted
that he was serving five years on community supervision for the offense of possession
of narcotics with intent to deliver. Gabriel Guzman, also a friend of appellant,
testified that in July 2007, after the complainant had been shot, Alvarez and appellant
met with him. He stated that Alvarez, who had brought a .380 handgun concealed in
a shoe box, offered to sell the handgun to him. 
          Appellant testified that he had seen Alvarez, who took Xanax “three or four
times a week,” buy Xanax from the complainant every other week. Appellant
explained that he did not take Xanax because it gave him seizures. He noted that on
the day of the shooting, Alvarez had arranged to buy Xanax from the complainant,
appellant had “just followed” along, and appellant did not know that Alvarez intended
to rob the complainant. Alvarez called the complainant “several times” on his cellular
telephone to provide directions to appellant’s apartment. The two met the
complainant in his car on the street behind appellant’s apartment complex, where
Alvarez got into the front passenger’s seat and appellant got into the back seat behind
the complainant. The complainant then handed Alvarez a bag of pills. As the
complainant drove his car, Alvarez pointed to his left towards the complainant, who
turned his head to look. Appellant then heard a gunshot from inside the car. 
Appellant saw the complainant “lift his hands and [fall] forward.” Appellant
immediately jumped out of the car while it was still moving and ran towards his
apartment. As he was running, Alvarez caught up with him. When appellant asked
why Alvarez had shot the complainant, Alvarez replied, “I told you I got you, man.” 
Back at his apartment, appellant saw Alvarez with the bag of Xanax and a handgun. 
Appellant denied owning a .380 handgun, admitted to owning a nine millimeter
handgun, and noted that he had seen Alvarez with a .380 handgun a “few times.” 
          Appellant denied owning the bottle of Xanax recovered by Officer Sanchez
during his arrest, but admitted that he may have told Sergeant Huynh that his seizures
might be caused by the marijuana he smoked daily rather than Xanax. Appellant also
denied telling Figueroa that he and Alvarez had planned to rob the complainant and
telling anyone that he had killed the complainant.
Legal and Factual Sufficiency
          In his sixth and seventh issues, appellant argues that the evidence is legally and
factually insufficient to support his conviction because the State’s evidence “was
inherently unreliable” and his “alternative perpetrator” theory was a “far more
credible . . . explanation” of how the complainant was killed.
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). 
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to “ensure that the evidence presented
actually supports a conclusion that the defendant committed” the criminal offense of
which he is accused. Id.
          In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, i.e., that the
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury’s determinations. Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006). Although we should always be “mindful” that a jury is
in the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is “the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called ‘thirteenth juror.’” Watson, 204 S.W.3d at 414, 416–17. 
Thus, when an appellate court is “able to say, with some objective basis in the record,
that the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury’s verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial.” Id. at 417.
          A person commits the offense of capital murder if he intentionally or
knowingly causes the death of an individual and does so in the course of committing
or attempting to commit robbery. Tex. Penal Code Ann. § 19.02(b)(1) (Vernon
2003), § 19.03(a)(2) (Vernon Supp. 2009).
          In support of both his legal and factual sufficiency challenges, appellant asserts 
Alvarez had every motive to shift blame to [appellant]. So did the only
other witness, Figueroa, who was facing three potential life sentences in
three felony cases of his own. Based on the overwhelming motives to
lie by both key State’s witnesses, their testimony should be disregarded
. . . and this conviction should be reversed.

          Viewing all of the evidence in the light most favorable to the verdict, appellant
admitted to being the backseat passenger in the car when the complainant was shot,
and the complainant was shot in the back of his head. Dr. Chu testified that the bullet
traveled from back to front, and right to left, through the complainant’s skull,
consistent with the shot having come from the back seat. Significantly, a spent .380
shell casing was found on the rear seat behind the front passenger’s seat, consistent
with having been ejected to the right when the gun was fired. Alvarez testified that
after he set up the meeting for appellant to buy Xanax from the complainant, they met
the complainant in his car. After the complainant handed the Xanax to Alvarez and
he handed it to appellant, Alvarez heard the shot that killed the complainant. 
Appellant then jumped out of the moving car. Back at appellant’s apartment, Alvarez
saw appellant with a baggie of Xanax and hide a .380 handgun in his closet. Figueroa
testified that appellant told him that he shot the complainant because the complainant
could identify who had robbed him. Finally, we note that even though appellant
denied using Xanax, a bottle of Xanax was found in appellant’s bedroom when he
was arrested. Given this evidence, a reasonable trier of fact could have concluded
that appellant shot the complainant and disbelieved appellant’s “alternative
perpetrator” theory. Accordingly, we hold that the evidence is legally sufficient to
support the jury’s finding that appellant was guilty of capital murder.
          Viewing the evidence in a neutral light, appellant did testify that Alvarez shot
the complainant. The State’s witnesses could not testify as to the exact position of
the complainant’s head and body when he was shot nor the location of the shooter. 
Soria and Guzman testified that they saw Alvarez with a .380 handgun both shortly
before and shortly after the complainant had been shot. Alvarez, who admitted that
he did not want to go back to jail and would do “anything” to avoid prison, had a
motive to identify appellant as the shooter. Likewise, Figueroa had a motive to say
that appellant had told him that appellant was the shooter because the sentencing
judge would be made aware of his cooperation in this case. However, as noted above,
a .380 casing, which matched the type of handgun and bullet with which the
complainant was shot, was found on the backseat of the car to the right of where
appellant was sitting, consistent with its ejection to the right from a standard .380
handgun. Further, the jury was free to believe some testimony and disbelieve other
testimony. Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Thus, the
jury could have disbelieved appellant’s testimony that Alvarez shot the complainant
and believed the testimony of Alvarez and Figueroa. We conclude that the verdict is
not “clearly wrong and manifestly unjust” and the proof of guilt is not against the
great weight and preponderance of the evidence. See Watson, 204 S.W.3d at 414–15. 
Accordingly, we hold that the evidence is factually sufficient to support appellant’s
conviction.
          We overrule appellant’s sixth and seventh issues.
Exclusion of Evidence
          In his first issue, appellant argues that the trial court erred in excluding “the
out-of-court statement of [Alvarez] that implied he committed the offense” because
it was a statement against interest and excluding it unconstitutionally restricted the
presentation of his defense.
          We review a trial court’s decision to exclude evidence under an abuse of
discretion standard. Rodriguez v. State, 203 S.W.3d 837, 841 (Tex. Crim. App.
2006). Therefore, we will not reverse a trial court as long as its ruling was within the
“zone of reasonable disagreement.” Id. 
          Appellant sought to establish that Alvarez, two weeks after the murder of the
complainant, while offering to sell to Guzman a .380 handgun, laughingly told
Guzman, “Yeah, I just did something good” in response to Guzman’s inquiry as to
whether the handgun was “burned or dirty.” After the State objected to the evidence,
the trial court ruled that “everything comes in except, ‘I just did something good.’” 
It explained “[t]hat’s so vague, it’s not even – that’s not an admission.” Appellant
asserts that this statement indicated that Alvarez had “used [the handgun] in a crime”
and made it “more likely” that Alvarez was involved in the murder of the complainant
or “another crime” or “anything.” 
          The United States Supreme Court has held that where the constitutional right
to present witnesses in a defendant’s own defense is implicated, the “hearsay rule may
not be applied mechanically to defeat the ends of justice.” Chambers v. Mississippi,
410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973). In criminal cases, the Texas Rules
of Evidence allow a declarant’s hearsay statement against penal interest to be
admitted if the statement “so far tended to subject the declarant to . . . criminal
liability . . . that a reasonable person in declarant’s position would not have made the
statement unless believing it to be true” and “corroborating circumstances clearly
indicate the trustworthiness of the statement.” Tex. R. Evid. 803(24). Thus, in
assessing the admissibility of Alvarez’s statement, the first inquiry is whether the
statement, considering all of the circumstances, tended to expose Alvarez to criminal
liability and whether he realized this when he made the statement. Walter v. State,
267 S.W.3d 883, 890–91 (Tex. Crim. App. 2008). The second inquiry is whether or
not corroborating circumstances clearly indicated the trustworthiness of the statement. 
Id. at 891. If Alvarez’s hearsay statement properly satisfied both inquiries, it was
admissible as a statement against interest, and the third inquiry then is whether its
exclusion was constitutional error because “the evidence form[ed] such a vital portion
of the case that exclusion effectively precludes the defendant from presenting a
defense.” Potier v. State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).
          Alvarez’s statement to Guzman that “I just did something good” is vague in
that it could not expose Alvarez to criminal liability for the complainant’s death or
any specific criminal act. That the handgun had been “burned” tends to indicate that
Alvarez used it for the commission of some crime, which could have weakened his
credibility. However, appellant did not get an adverse ruling on the issue of whether
the handgun had been “burned.” To preserve error, a complaining party must obtain
an adverse ruling on the record or object to the trial court’s refusal to rule on an
objection. Tex. R. App. P. 33.1(a); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim.
App. 1996); Thierry v. State, 288 S.W.3d 80, 85 (Tex. App.—Houston [1st Dist.]
2009, pet. ref’d). Appellant simply did not ask Guzman in the presence of the jury
about whether the handgun had been “burned.”
          Regardless, the trial court’s exclusion of Alvarez’s statement that he had “just
[done] something good” with the handgun did not “preclude” appellant from
presenting his defense that it was Alvarez who shot the complainant. Appellant
testified that Alvarez shot the complainant, and Guzman testified that Alvarez, not
appellant, offered to sell him a .380 handgun two weeks after the murder. Also,
Alvarez admitted that he had shot firearms before the murder, and he was in the car
when the complainant was shot. 
          Accordingly, we hold that the trial court did not err in excluding the testimony
of Guzman that Alvarez had told him “Yeah, I just did something good” with the
handgun.
          We overrule appellant’s first issue.
Cross-Examination
          In his second issue, appellant argues that the trial court erred in restricting the
scope of his cross-examination of Alvarez about his use of Xanax and firearms and
his awareness of what his punishment would be if he admitted to shooting the
complainant because the jury “would have received a significantly different
impression of Alvarez’s credibility.” 
          A trial court has discretion to decide the admissibility of evidence, and, absent
an abuse of discretion, its rulings will not be overturned. Moses v. State, 105 S.W.3d
622, 627 (Tex. Crim. App. 2003). To determine whether a trial court has abused its
discretion, we consider “whether the [trial] court acted without reference to [the
pertinent] guiding rules and principles; that is, whether the court acted arbitrarily or
unreasonably.” Fox v. State, 115 S.W.3d 550, 558 (Tex. App.—Houston [14th Dist.]
2002, pet. ref’d). 
          Through the Confrontation Clause of the Sixth Amendment, an accused enjoys
the right “to be confronted with the witnesses against him” by an opportunity to
cross-examine the witnesses. U.S. Const. amend. VI, XIV; Delaware v. Van Arsdall,
475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986) (quoting Davis v. Alaska, 415 U.S.
308, 315–16, 94 S. Ct. 1105, 1110 (1974)); see Lopez v. State, 18 S.W.3d 220, 222
(Tex. Crim. App. 2000). The right to cross-examine witnesses requires that an
accused be given wide latitude to explore a witness’s story, test his perceptions and
memory, and impeach his credibility, including any fact that would tend to establish
his “‘ill feeling, bias, motive, and animus’” against the accused. Parker v. State, 657
S.W.2d 137, 139 (Tex. Crim. App. 1983) (quoting Simmons v. State, 548 S.W.2d 386
(Tex. Crim. App. 1977)). 
          However, a trial court retains wide discretion to impose reasonable limits on
cross-examination based on concerns such as harassment, prejudice, confusion of the
issues, the witness’s safety, or interrogation that is repetitive or only marginally
relevant. Van Arsdall, 475 U.S. at 679, 106 S. Ct. at 1435; Lopez, 18 S.W.3d at 222. 
This analysis is fact intensive, and a defendant’s right to cross-examine the witness
must be balanced against the probative value of the evidence. Lopez, 18 S.W.3d at
222. When a defendant complains about the denial of the opportunity to cross-examine a witness generally about matters concerning the witness’s credibility, he,
to preserve error, need not show what his cross-examination would have revealed, but
only the general subject matter about which he desired to examine the witness and,
if challenged, show on the record why such testimony should be admitted into
evidence. Virts v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987).
          The first exchange that appellant complains about occurred as follows:
[Appellant’s Counsel]:When is the last time you took Xanax?
 
[State]:Objection to relevance, Judge.
 
[Trial Court]:Sustained.
 
[Appellant’s Counsel]:Have you taken any Xanax since July
19, 2007?
 
[State]:Objection to relevance.
 
[Trial Court]:Sustained.

The second exchange occurred as follows:
 
[Appellant’s Counsel]:Have you shot [.22] guns since you
were convicted of the felony of
possession of cocaine?
 
[State]:Objection. Relevance.
 
          [Trial Court]:                             Sustained.

          Appellant now asserts that the exclusion of the answer to the first question
prevented him from attacking Alvarez’s “competence to testify” if he “had taken
[Xanax] in large quantities before testifying” and, in regard to shooting firearms, the
only theories presented at trial were that either appellant or Alvarez was the murderer.
However, appellant failed to preserve any error associated with the trial court’s
exclusion of the answers to these two questions. After the State objected, appellant
did not inform the trial court of how the questions were relevant, nor was their
relevance apparent from the context of the questions asked. He also did not
specifically ask Alvarez about whether he had taken Xanax prior to testifying. We
note that appellant did ask numerous questions about Alvarez’s narcotics use and
prior use of handguns, both of which he admitted. 
          The third exchange appellant complains about occurred as follows:
[Appellant’s Counsel]:What do you think would happen to you if
you were to admit you were the one who shot
[the complainant]?
 
[State]:Objection, Judge. Speculation, relevance.
 
[Trial Court]:. . . Where are you going with that?
 
[Appellant’s Counsel]:. . . Bias and motive. That’s the reason he’s
lying because he knows if he tells the truth,
he’s going to go to prison the rest of his life. 
That’s his motivation for lying. . . . 
 
[State]:You’ve already asked those questions, you
don’t want to go back to jail. I just think
that’s an argumentative question. He doesn’t
know what would happen. That’s complete
speculation.
 
[Appellant’s Counsel]:He says he doesn’t know what happened. He
knows what happened. He admitted doing it. 
If he is the one that pulled the trigger, he is
going to die in prison. He doesn’t want to go
back.
 
[Trial Court]:You have covered all of that. . . . I’m going to
sustain the objection the way it’s phrased . . .
Sustained.

          Although appellant properly preserved his complaint by informing the trial
court that he wanted to cross-examine Alvarez about his motive to lie and say that
appellant shot the complainant, the trial court, concerned about “interrogation that is
repetitive,” noted “[y]ou have covered all that.” The record shows that appellant had
already asked several questions of Alvarez about his dislike of incarceration and his
desire not to go back to jail or to go to prison. Accordingly, we hold that the trial
court did not err in limiting appellant’s cross-examination of Alvarez. See Van
Arsdall, 475 U.S. at 679, 106 S. Ct. at 1435; Lopez, 18 S.W.3d at 222. 
          We overrule appellant’s second issue. 
Jury Charge
          In his third issue, appellant argues that the trial court erred in instructing the
jury on the law of parties and accomplice witnesses because Figueroa’s testimony,
which was the only testimony about an agreement between appellant and Alvarez to
rob the complainant, was “so unreliable that it should not have been a basis for the
charge” and the State “insisted throughout that [a]ppellant was the triggerman.”
          Appellant acknowledges that even if a trial court errs in submitting a parties
instruction, when “the evidence clearly supports a defendant’s guilt as a principal
actor” the error is harmless because if there is “no evidence tending to show [the
defendant’s] guilt as a party, the jury almost certainly did not rely upon the parties
instruction in arriving at its verdict, but rather based the verdict on the evidence
tending to show [the defendant’s] guilt as a principal actor.” Ladd v. State, 3 S.W.3d
547, 564–65 (Tex. Crim. App. 1999) (citation omitted). Also, if a trial court errs in
giving an accomplice-witness instruction, that error is harmless because the
accomplice-witness rule protects the interests of the defendant by requiring the State
to bring additional evidence connecting the defendant with the offense committed. 
See Jester v. State, 62 S.W.3d 851, 855–56 (Tex. App.—Texarkana 2001, pet. ref’d).
          Here, as outlined above, ample non-accomplice evidence supported appellant’s
guilt as the principal actor. See Ladd, 3 S.W.3d at 564–65. Further, if Alvarez and
appellant were not accomplices, then the trial judge’s instruction regarding
accomplice witnesses as a matter of fact was superfluous and did not harm appellant. 
See Druery v. State, 225 S.W.3d 491, 497–98 (Tex. Crim. App. 2007). 
          We overrule appellant’s third issue.
Jury Argument
          In his fourth and fifth issues, appellant argues that the trial court erred in
restricting his jury argument and in overruling his objections to the State’s improper
jury arguments because it denied him due process and a fair trial.
          Generally, permissible jury argument concerns (1) a summation of the
evidence; (2) reasonable deductions from the evidence; (3) answering argument of
opposing counsel; or (4) pleas for law enforcement. Wesbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000) (en banc). A trial court has broad discretion in
controlling the scope of closing argument, but it may not prevent defense counsel
from making a point essential to the defense. Lemos v. State, 130 S.W.3d 888, 892
(Tex. App.—El Paso 2004, no pet.); see Herring v. New York, 422 U.S. 853, 862–63,
95 S. Ct. 2550, 2555–56 (1975). All inferences from the evidence that are legal, fair,
and legitimate may be argued by the defense. Melendez v. State, 4 S.W.3d 437, 442
(Tex. App.—Houston [1st Dist.] 1999, no pet.), overruled on other grounds, Small
v. State, 23 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). However,
a trial court has the duty to sustain objections to argument when the argument violates
some rule or statute. See Bray v. State, 478 S.W.2d 89, 90 (Tex. Crim. App. 1972);
Eckert v. State, 672 S.W.2d 600, 603 (Tex. App.—Austin 1984, pet. ref’d). 
          The State may argue outside the record in responding to the defense having
done so, but it may not stray beyond the scope of the invitation. Wilson v. State, 938
S.W.2d 57, 60–61 (Tex. Crim. App. 1996) (en banc), abrogated on other grounds,
Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002). Even when a trial court
erroneously allows improper argument, the error is not reversible unless, in light of
the record as a whole, the argument is extreme or manifestly improper, violative of
a mandatory statute, or injects new facts harmful to the defendant into the trial
proceeding. Wesbrook, 29 S.W.3d at 115. Generally, an instruction to disregard the
remarks will cure the error. Id.
Appellant’s Jury Argument
          Appellant first asserts that the trial court “unconstitutionally restricted the due
process right of the defense to present a complete summation of the evidence from
the standpoint of the defendant” when it sustained the State’s objections to arguments
by trial counsel that no witnesses had testified that appellant had previously
committed a violent act and HPD had failed to record on videotape its interview with
Alvarez. 
          Trial counsel argued as follows:
[Appellant’s Counsel]:. . . The State did a very thorough job
presenting their case; and if they would have
had people to say that Mr. Ramirez was
someone who was violent, someone who beat
up people, someone who got in fights, I mean,
if he got in a fight in the first grade, he would
have brought somebody in.
 
[State]:I object. This is improper argument.
 
[Trial Court]:Sustained.
 
[Appellant’s Counsel]:There is not a scintilla of evidence that Mr.
Ramirez has a violent bone in his body. Can
you imagine that the police come to arrest and
they say, Hey, look, we will put you in a small
room, no recording on videotape. I wonder
why there is no recording of Mr. Alvarez’s of
a confession or a statement that he made so
we can look at him, see if he’s nervous. He
says, I’ll do an audio recording by listening to
it, which makes me very suspicious.
 
[State]:Objection, Judge. That’s outside the record. 
Improper argument.
 
[Trial Court]:Sustained.

          First, appellant attempted to address a lack of evidence about any violent
behavior when the record shows that he did not put in issue his character for violent
behavior during the guilt phase of the trial. Regardless, although the trial court
sustained the State’s objection, appellant continued his argument without further
objection highlighting the lack of any evidence that he had a violent character. 
          Second, trial counsel for appellant attempted to argue that the absence of a
video recording “made me very suspicious.” (Emphasis added.). However, it is not
proper for counsel to inject his personal opinions into argument lest he convey to the
jury the idea that he has bases for his conclusions in addition to the evidence before
the jury. Wyatt v. State, 566 S.W.2d 597, 604 (Tex. Crim. App. 1978); Luna v. State,
717 S.W.2d 176, 182 (Tex. App.—Fort Worth 1986, no pet.).
          Accordingly, we hold that the trial court did not err in excluding the
complained-of portions of appellant’s argument.
The State’s Jury Argument
          Appellant next asserts that the trial court, in overruling his objections to
portions of the State’s jury argument, allowed the State to (1) strike at him over the
shoulder’s of his counsel by accusing him of “cheating”; (2) question the credibility
of appellant’s witnesses; and (3) “mischaracterize[] the jury charge” on the burden of
proof.
          The State’s first argument about which appellant complains is as follows:
[State]:And I objected to the things that [Appellant’s
Counsel]: said and said improper jury
argument, and let me tell you why. He talked
to you about not hearing any evidence about
the defendant being violent? Well, in direct
response to that, he knows the rules of
evidence and what applies in a courtroom and
what’s allowed during the portion of the trial
–
 
[Appellant’s Counsel]:I object. This is improper argument, Your
Honor.
 
[Trial Court]:Overruled. It’s a response to argument.
 
[State]:He knows exactly what’s allowed. And he
said nobody heard Noel Alvarez’s statement? 
And I find that very disturbing, again, the
rules of evidence and what we are allowed to
do in court. . . . 

          Responding to argument of opposing counsel is permissible. See Wesbrook,
29 S.W.3d at 115. Here, the State responded to appellant’s argument that there was
no evidence that he was a violent person by explaining why no such evidence was
presented. 
          The State’s second argument about which appellant complains is as follows:
[State]:He brought witnesses to talk to you about
Noel. Let’s see, Sacramento Soria who kind
of knew Noel, saw him a couple of times, saw
him with a gun, don’t know if it was a .380
because I don’t know what one looks like . . .
Then he brought Gabriel Guzman. Yeah,
[Noel] tried to sell me a gun — the defendant
is right there — but it didn’t look like that
one. . . . And [appellant] wants to suggest to
you that his witnesses were credible?
 
[Appellant’s Counsel]:I object, Your Honor. There is no evidence of
that behavior. It is improper jury argument.
 
[Trial Court]:Sustained.
 
[Appellant’s Counsel]:Ask for an instruction to disregard.
 
[Trial Court]:Disregard the last statement made by the
prosecutor.
 
[Appellant’s Counsel]:Move for mistrial. 
 
[Trial Court]:Denied. 
 
[State]:It’s your job to judge the credibility of the
witnesses. It’s your job to gauge their
demeanor. It’s your right to decide whether
what they said to you is believable or not. 

          Appellant asserts that the State “attacked the defense attorney” by noting his
suggestions that his witnesses were credible. However, the trial court granted
appellant’s request for an instruction to disregard, which will generally cure any such
error. See id. Moreover, in its charge, the trial court instructed the jury that “[y]ou
are the exclusive judges of the facts proved, of the credibility of the witnesses and the
weight to be given to their testimony.” Additionally, the State in its follow up
argument, essentially restated the trial court’s instruction. Only offensive or flagrant
error warrants reversal when there has been an instruction to disregard. Id. at 116.
Here, the State’s comments were not so flagrant that the instruction to disregard was
ineffective.
          The State’s third argument about which appellant complains is as follows:
[State]:Whether the defendant shot and killed [the
complainant] or not is clear from all of the
evidence beyond a reasonable doubt. It
doesn’t matter even if Noel shot and killed
[the complainant], although there is no
evidence to suggest that because the charge
tells you he is guilty no matter what.
 
[Appellant’s Counsel]:Your Honor, that’s a misstatement what the
jury charge says. It does not say it doesn’t
matter if Noel Alvarez is the one who shot,
the client is still guilty. That’s a misstatement
of the law.
 
[Trial Court]:I’ll sustain it, but – I will sustain it, but just
read the charge for yourselves.

          The State’s argument could have misled the jury about the burden of proof that
it was required to meet to convict appellant and implied that appellant was guilty
regardless of what the charge stated. The trial court sustained appellant’s objection
and immediately instructed the jury that the correct statement of the law on the burden
of proof could be found in its charge. Nevertheless, to preserve error regarding
allegedly improper jury argument, a party must object and pursue an adverse ruling
by requesting an instruction for the jury to disregard and if the instruction is given,
moving for a mistrial. See Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App.
2007); Brooks v. State, 642 S.W.2d 791, 798 (Tex. Crim. App. 1982). By not moving
for a mistrial, appellant failed to preserve this portion of his issue for our review. See
Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) (en banc).
          We overrule appellant’s fourth and fifth issues.Conclusion
          We affirm the judgment of the trial court.



                                                                        Terry Jennings 
                                                                        Justice

Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).